# SEPAUGH v. METHODIST HOSPITAL.—202 S. W. (2d) 985.

En Banc. November 29, 1946.

Rehearing denied January 22, 1947.

Petition for Certiorari denied by Supreme Court, June 6, 1947.

Rehearing denied by Supreme Court, June 26, 1947.

Graham Moore, of Memphis, for plaintiff in error.

Millsaps Fitzhugh, of Memphis, for defendant in error.

HALE, J. Mrs. Sepaugh sued the Hospital to recover damages alleged to have been caused by the negligence of an interne-employee of the Hospital in the administra-

tion of a hypodermoclysis. At the close of her proof her suit was dismissed on defendant's motion for peremptory instructions. She then moved for a new trial which was denied. The present appeal has resulted. She has assigned errors which may be summarized as asserting the trial judge improperly excluded certain material evidence, and would not permit the reading of medical works to the jury, and that, in any event, there was sufficient evidence to require the submission of the case to the jury.

As we understand it, a hypodermoclysis is administered by the injection of needles through the skin and then through connecting tubes permitting the flow of the desired fluid into the soft tissues of the body.

The gist of the negligence averred in the declaration is (a) the skin was not sterilized at the place the puncture was made, and (b) the needle was improperly inserted and permitted to remain too long in this spot.

Mrs. Sepaugh testified she entered the Hospital in June, 1942, as a pay patient and underwent a serious abdominal operation on June 16th at the hands of her surgeon, Dr. Coors; that late in the afternoon of the next day the hypodermoclysis was (on order of her doctor) administered by an interne, later identified as Dr. Lunceford, who was in the pay of the Hospital; that the injection of the needle into her right leg was made without rubbing anything on her skin and without using any gauze between the needle and the flesh; that this injection caused much pain of which complaint was made to this interne who told her to stand it as it was for her own good and he then told her graduate nurse to watch it; that she continued to suffer much pain and her nurse then called a nurse employed by the Hospital who looked at her leg and then went and brought back the interne; that some 40 to 45 minutes elapsed from the starting of the flow until the

return of the interne, during this time the area around the needle raised up a little. ''I call it a knot, like if you blow up a bag or a balloon,'' and the interne then removed the needle and administered a hypodermoclysis in her left leg which later was without undue pain or untoward results; that the place on her right leg continued to hurt and on the following morning was swollen and discolored and had a blister about the size of a silver dollar; that she continued to suffer from this condition up to her discharge from the Hospital on June 28th, when the place ''had broken and was all red and swollen up''; that she thereafter went to Dr. Coor's clinic and he performed a local operation on her leg by taking out the bad flesh; that the place was infected and when it was opened by Dr. Coors the pus ran down her leg; that this continued to cause her great pain and suffering and resulted in disabilities not necessary to be further noticed.

██ By the Record Librarian of the hospital (who has charge of the records) the plaintiff offered to prove a record made in the regular course of business by Dr. Kuykendall (sometimes called ''Kirkendale'' in the record) who was the Historian of the Hospital, relating to plaintiff's condition. Under the heading ''Extremities'' is this entry: ''On the medial side of the right thigh, there is a vesicle about the size of a silver dollar. It is very hyperemic at the edge.''

Defendant objected to this record on the ground there had been no foundation laid for its introduction. The objection was sustained. This was error. We are not presented with a case involving third parties and the authorities relating thereto are not relevant. This is a suit against a defendant whose records are sought to be placed in evidence. In Continental Nat. Bank v. First Nat. Bank,

108 Tenn. 374, at pages 380, 381, 68 S. W. 497, 499, it is said:

"It is said it was error to introduce the books of the bank in evidence. They were produced and identified by the cashier. It is said the defendants should have gone further, and shown by the party who made the entries that they were correct.

"The books were introduced to show the state of accounts between the Nashville Bank and Duncan, Gaines and Morrow; the object being to show by the course of dealing between the bank and these parties that the bank was treating and dealing with them as solvent, reliable customers.

"It has been held that where it becomes material either for or against a corporation, and as against a stranger or as between two strangers, to prove what was done by the bank, its books and records are admissible in evidence, and they are the best evidence. 6 Thomp. Corporations, Sec. 7734.

"We think it not necessary that the bookkeeper who made the entries should be examined as to their correctness.

"At most, he could only testify that the entries made by him are true entries of transactions reported to him by others. In other words, he could only testify that he wrote down what others told him. The court knows, as a matter of common information, that there are many persons in the employ of banks, and each has his different department, and each transaction passes through the hands of several—it may be, of many—persons. We take a deposit, for instance. It goes into the hands of the receiving teller, thence into the hands of a journal clerk, thence to the individual bookkeeper, or such other officials as perform the functions of these officers. When it

reaches the hands of the bookkeeper, who makes the final entry, which stands as the true statement between the bank and depositor, it has gone through the hands of a dozen parties, perhaps; and the last party only records what comes to him through so many hands, and knows nothing, it may be, of the actual transaction. It would seem that the cashier, whose function it is to overlook all transactions at the counter and over the books, and test each transaction through all its stages, should be the person most competent to produce the books and vouch for their accuracy.''

To the same effect see Burns v. City of Nashville, 142 Tenn. 541, at pages 610, 611, 221 S. W. 828, and Cook & Co. v. Seaton, 6 Tenn. App. 81, at page 85 et seq.

In Jones' Commentaries on Evidence, 2d Ed., par. 992 at pages 1821, 1822, it is said: ''The entries in account-books, like other admissions, are evidence against the party making them; and, of course, although not made by the party sought to be charged in person, such entries are admissible against him if made by some servant or agent authorized to make such entries on his behalf. They are admissible irrespective of the name by which the book may go or pass, or the manner in which it is kept. The reason is that such entries are not admissible merely because they are 'book entries' but because they are statements in writing which are binding upon the party responsible for their inscription whether the entry is in his own writing or that of the person he has authorized in that behalf.''

Under these authorities we think the record in question was admissible in evidence.

There was a former suit in which Dr. Murray Tate testified for the plaintiff. He afterwards died and his evidence was offered in the present suit. A great part

of his testimony was excluded under defendant's objection, to which error is assigned by plaintiff. He said he attended Mrs. Sepaugh who "had the results of a puncture by a needle in the thigh," and that she was suffering considerably. He was then asked a hypothetical question in which he was asked to assume, inter alia, that the fluid flowing into plaintiff's leg caused "severe pain, similar to the pain resulting from scalding water; that the burning sensation continued until the needle" was withdrawn, etc. There is no testimony to this effect. A hypothetical question based on nonexistent "facts" could have no value. Fisher v. Travelers' Ins. Co., 124 Tenn. 450, 138 S. W. 316, Ann. Cas. 1912D, 1246. This part of the testimony was properly excluded although the learned trial judge seems to have put it on another basis. The witness then stated that if the solution had been pure and the equipment free of contamination and the technique of the interne had been proper there would not have been any injury. We think this was admissible. The fact that Dr. Tate had been excluded from the Medical Association, but not debarred from practice, and his explanation therefor, would go to the weight—not the admissibility—of his testimony. Then, too, there was some confusion in his testimony as to his understanding of a hypodermoclysis. On his direct examination (excluded by the court) the following occurred:

"Q. What is a hypodermoclysis . . .? A. Hypodermoclysis, that is the injection of some medical material through the vein into the body.

"Q. Now, what is intravenous—you say hypodermoclysis goes into the vein. A. No.

"Q. Where does it go? A. The hypodermoclysis goes into some portion of the body, into the flesh.

On cross-examination he seems to recognize the differ-
ence between a hypodermoclysis and an intravenous in-
jection, but at the conclusion of this cross-examination he
testified: "Q. All right, Doctor. My point is this, that
your answer to the hypothetical question had to do, and
giving your opinion as to the cause of this injury had to
do with an intravenous injection, didn't it? A. Yes, sir."

These statements cannot be reconciled unless there was
a confusion of the term *inter*venous with *intra*venous.
But we think this was a question which addressed itself
to the jury, not to the court. In short, this went to the
weight, not the admissibility, of his testimony, and there
was error in excluding it.

Under the evidence viewed in the light most
favorable to the plaintiff we have a negligent act, an in-
jury, and a causal connection between the negligence and
injury. Although we concede the record as now consti-
tuted makes a weak case, still it presents a jury question.
In the first trial the plaintiff testified the hypodermocly-
sis was given "after the nurse prepared my leg" for it.
On the present trial she undertook to qualify or explain
that by saying they were "preparing things around me
and getting things ready . . . that is what I mean,
they were preparing." She also admitted she had identi-
fied and sued another doctor as the one who gave this
hypodermoclysis. She was rigorously cross-examined as
to other suits, the issuance of bad checks, nonpayment of
debts, and so on. While this might go to her credibility
as a witness we think this was a question for the jury.
Likewise, in the presentation of her case she put on the
stand her nurse, Mrs. McCarthy, to prove that the hypo-
dermoclysis was started by the interne, Dr. Lunceford.
On cross-examination Mrs. McCarthy testified the place
was sterilized, the hypodermoclysis was properly admin-

istered, and there were no untoward results. Her testimony is in direct conflict with that of plaintiff. But does it, as a matter of law, nullify plaintiff's testimony? We do not think so; it only presents a contradiction to be settled by the jury as the sole judges of the weight of the evidence.

"It is settled that a trial judge has no power to direct a verdict in any case where there is a dispute as to any material evidence, or any reasonable doubt as to the conclusion to be drawn from all of the evidence." Provident Life & Acc. Ins. Co. v. Prieto, 169 Tenn. 124, at page 136, 83 S. W. (2d) 251, 256. Illustrations might be multiplied. We think there was sufficient evidence to carry the case to the jury and that the court erred in sustaining the motion for peremptory instructions.

The plaintiff also complains that the trial judge erred in refusing to allow her counsel to read to the jury certain medical works as evidence. This was not error. Byers v. Nashville, C. & St. L. Railroad, 94 Tenn. 345, 29 S. W. 128; Sale v. Eichberg, 105 Tenn. 333, 59 S. W. 1020, 52 L. R. A. 894; American Nat. Ins. Co. v. Smith, 18 Tenn. App. 222, 74 S. W. (2d) 1078; Standard Life Ins. Co. v. Strong, 19 Tenn. App. 404, 89 S. W. (2d) 367; 32 C. J. S , Evidence, Sec. 718, page 627.

Reversed and remanded at cost of Hospital.

## On Petition to Rehear.

Able counsel for the Hospital has filed a vigorous petition to rehear, in which it is very courteously urged that great error was committed in our opinion filed November 29, 1946.

(1) It is said we erred in holding the records of the defendant Hospital should have been admitted in evidence. Much reliance is placed on Hill v. National Life

& Accident Insurance Co., 11 Tenn. App. 33, which says, ''Before hospital records are admissible it is necessary to show that the party making them is not accessible'' as a witness. This case did not involve a suit against a hospital but was over an insurance contract. In the instant case, the record entry was in the nature of an admission against interest and we adhere to the decision made in the original opinion.

(2) It is also said we wrongfully held the testimony of Dr. Tate should have been admitted in evidence. We do not believe his expulsion from the Medical Association, in light of his explanation operated as a judgment of infamy so as to prevent him from testifying in this case.

(3) Nor do we think we erred in holding that Mrs. Sepaugh was not concluded by the testimony of her private nurse, Mrs. McCarthy, to the effect that the skin was sterilized and the hypodermoclysis properly administered. There were indications that Mrs. McCarthy was hostile to plaintiff. In addition, conflicts of this nature are to be determined by the jury.

(4) Complaint is made to the effect there was no causal connection between the alleged negligence and injury. We think the testimony of Dr. Tate that if the proper technique had been observed there would have been no injury, would have supplied the causal connection if believed by the jury.

(5) Finally, it is urged with great ability that the Hospital would not be liable for the negligence of an interne. This was not discussed in our original opinion, although it should have been done.

Dr. W. H. Lunceford was selected as an interne by the Interne Committee after a careful investigation of his record which disclosed excellent character, ability

and aptitude. Counsel for plaintiff conceded there was no negligence in his selection.

Dr. Lunceford was paid a nominal salary by the Hospital during his interneship. It was his duty to follow the orders of the attending physician. A patient at the hospital is entitled to the generally accepted services of a hospital including the services of the interne. The interne can make no charge for his services. The patient has no voice in the selection of the interne. There is no contract between them. If the attending physician ordered a hypodermoclysis be administered a patient, it would be the duty of the interne to give it; it was a part of the services rendered by the hospital by virtue of the relation existing between it and the patient.

Was this interne an independent contractor? Or was he merely an employee of the Hospital so as to make it liable for his negligence?

If the injuries to the plaintiff resulted from a nonnegligent administration of the hypodermoclysis, it is manifest there would be no liability on the part of the Hospital. But the plaintiff's proof, if believed by the jury, presented a *negligent* administration of this "not very complicated thing," as described by learned counsel.

The opinion of Judge Cardozo in Schloendorff v. Society of New York Hospital, 211 N. Y. 125, 105 N. E. 92, 52 L. R. A., N. S., 505, Ann. Cas. 1915C, 581, is relied upon to relieve the Hospital from liability for the negligence of this interne. That case held where, as in the instant case, there was no negligence in the selection of an interne or nurse, the hospital would not be liable. But our Supreme Court, in the recent case of Baptist Memorial Hospital v. Couillens, 176 Tenn. 300, at page 307, 140 S. W. (2d) 1088,

held a hospital liable for the negligent acts of attendants, even though they be selected with due care, and in direct terms puts the Schloendorff case in a minority it would not follow.

In City of Miami v. Oates, 152 Fla. 21, 10 So. (2d) 721, 724, the Supreme Court of Florida rejected the contention that an interne was an independent contractor, saying: "There can be no question but that a hospital is as much liable under the doctrine of respondeat superior for the negligence of an interne who is in nowise an independent contractor, but a mere employee, as it is for that of a nurse under like employment."

And the Supreme Court of Virginia in Stuart Circle Hospital Corp. v. Curry, 173 Va. 136, 3 S. E. (2d) 153, 158, 124 A. L. R. 176, said, "The interne is not an independent contractor so far as the patient is concerned. His contract is with the hospital. His service is a part of the numerous duties prescribed by the hospital, and he is selected, employed, directed, supervised, and paid by the hospital. . . . In rendering such services they act on behalf of their employer."

The petition to rehear is overruled at cost of petitioner.

## DISSENTING OPINION.

KETCHUM, J. (dissenting). I think the petition for a rehearing should be granted in this case.

The hospital did not undertake to treat the plaintiff, or to furnish her with doctors or nurses, but merely furnished the room she occupied and the usual facilities of the hospital for treatments by her own physicians and nurses. Dr. Lunceford, the interne who administered the hypodermoclysis, was a graduate physician who had been

highly recommended to the hospital as a man fully qualified by reason of his education and skill to perform the duties of an interne; and in administering the hypodermoclysis he was acting under the directions of the plaintiff's own physician, and not of the hospital. The hospital gave him no instructions in connection with administering the hypodermoclysis, which was an operation requiring the technical skill of an expert physician or nurse, and although it employed him as an interne it had no right to control or direct him as to the manner in which the operation should be performed.

Under these undisputed facts I do not think the hospital should be held liable under the rule of respondeat superior. The reasoning of Mr. Justice Cardozo in the case of Schloendorff v. Society of New York Hospital, 211 N. Y. 125, 105 N. E. 92, 52 L. R. A., N. S., 505, Ann. Cas. 1915C, 581, seems to me to be exactly in point.

Under our own cases the right of control of the person doing the wrong is the principal factor in determining the defendant's liability. In Powell v. Virginia Construction Company, 88 Tenn. 692, 697, 13 S. W. 691, 692, 17 Am. St. Rep. 925, Mr. Justice Lurton lays down the rule that "in every case, the decisive question is, had the defendant the right to control in the given particular, the conduct of the person doing the wrong?"

And throughout our cases this rule is uniformly followed and the principal or employer is held not to be liable in those cases in which he has neither reserved nor exercised the right to control the employee in respect to the manner in which the work is to be done. A few of the cases so holding are Mayberry v. Bon Air Chemical Co., 160 Tenn. 459, 26 S. W. (2d) 148; Phillips v. Tennessee Eastman Corporation, 160 Tenn. 538, 26 S. W. (2d)

1051; Odom v. Sanford & Treadway, 156 Tenn. 202, 299 S. W. 1045; and Howell v. Shepherd, Tenn. App., 196 S. W. (2d) 849.

For this reason I respectfully dissent from the holding of the majority in dismissing the petition for a rehearing.