# DELANEY v. TURNER.—237 S. W. (2d) 965.

Eastern Section.    July 14, 1948.

Petition for Certiorari denied by Supreme Court, Nov. 22. 1948.

Curry & Harris, of Chattanooga, for plaintiff in error.

Schoolfield & Graham, of Chattanooga, for defendant in error.

GOODMAN, J. The parties will be referred to in their respective capacities in the Court below.

This suit grows out of certain injuries allegedly received by the plaintiff when struck by an automobile belonging to the defendant, on or about the 26th day of December, 1945, and at a point in the driveway of the Union Bus Terminal, corner of Tenth and Market Streets, in the City of Chattanooga, Tennessee.

The plaintiff, Boedna C. Turner, recovered a judgment in the Court below against the defendant, Hobert De-

laney, in the sum of $1,800 and costs. Defendant's motion for a new trial having been overruled, an appeal in the nature of a writ of error was prayed, granted and perfected to this Court.

Nine assignments of error are here filed by the defendant (plaintiff-in-error) which, in substance, challenge the action of the Court in failing and refusing to grant defendant's motion for a directed verdict and raise two principal questions for this Court's determination; (1) that the evidence fails to establish liability on the part of the defendant under the doctrine of respondeat superior, and (2) that there is no testimony to support the allegations of negligence as contained in the declaration.

The proof is meager concerning the actual occurrence of plaintiff's injuries. His own testimony with respect thereto was as follows:

"Q. Along back in December, about the 26th day of December, to be exact, I'll ask you if you met with an accident, Boedna. A. I did.

"Q. Where did that happen? A. It happened right to the side of the bus terminal, baggage room.

"Q. Now is that a street or what is it there? Tell the jury what—A. No, that is not a street. The bus—buses coming in, inwards on the right side, they turn in off of Tenth Street, go on the right side, and that's where they unload, and on the left—No, I beg your pardon, I mean they go in on the left side and on the right side they load to go out. So I were going in on the left side to catch my bus to go home. That's where I—

"Q. What time of day or night was it, Boedna? A. Well, it was about twenty minutes of twelve. My bus left at a quarter of twelve.

"Q. Did you have any packages or anything? A. Yes, I did. I had been to the S & W working and I had

all my Christmas presents and my groceries and milk and everything. I had two big feed sacks full of groceries and stuff.

"Q. Now Boedna, did something or somebody strike you there? A. Well, when I knew anything, when I come to myself, there was a car setting up on both of my legs, and I was struggling. The ground, the concrete, was covered with ice at the time, and I pushed the car, you know, but being on the ice, it slid off of me. Then I worked myself back and got up. 'Course I sort of come to myself and wiped the blood and stuff off my face, and I got up and had all this glass there in one sack, and I come to myself, I was standing up over by the bus station by the garbage can, putting the sack in the garbage can. Two men run up by the side of me, a big fellow and one little short fellow. . . ."

The plaintiff received numerous injuries, including damage to his teeth and bridgework, and wounds and abrasions on his head, body and limbs, some of which are anticipated to result in permanent impairment, but none particularly indicative of the manner received.

Only one other witness testified with respect to the accident. He was a porter who was working at the bus terminal. He was asked:

"Q. Did you see a colored man run over there? A. I seen him knocked down, yes, sir. . . .

"Q. Were you allowed under your rules and orders there to go down there to where the accident happened? A. No, sir.

"Q. Did you go to it? A. No, sir, I stood up under the shed.

"Q. Where did it happen? A. Happened right on Tenth and—right off of Tenth and the bus line there

where you back in the bus line, where the bus driver comes in, comes in this way and then comes out this way and then turn back that way. He was coming up through the lane there, about the chain, and hit him right there close to the baggage room where we got some garbage cans. I was standing up under the shelter waiting on the bus, because that's where my duty was around to the front, from there to the back, check suitcases.''

The witness was further asked:

''Q. Did it knock this man down? A. Knocked him down. I seed him when he was getting up.

''Q. Did he have any packages in his hand? A. He had a gallon of milk, I know it was that much, buttermilk, and some fruit and some meal, I thought it was, in a sack.

''Q. Did it break anything there? A. Broke the milk and spilled his other stuff.''

On cross-examination, the witness was asked:

''Q. And when you first saw him the night of the accident he was getting up? A. Where the cab knocked him down, yeah.

''Q. He was getting up? A. That's right.

''Q. From the cab? A. That right.

''Q. That's when you first saw him that night? A. That's when I first saw him that night.''

Evidence was adduced to show that subsequent to the date of injury, the defendant admitted that it was his taxicab and his driver involved in the accident.

■■ Upon an analysis of the pertinent facts before us, it appears that a taxicab, owned by the defendant and operated by an employee of the defendant, then present within a driveway customarily used by taxicabs and buses, was involved in an accident resulting in injuries to the plaintiff. Although recognizing the force

of the authorities relied upon by the defendant, East Tennessee and Western North Carolina Motor Transportation Company v. Brooks, 173 Tenn. 542, 121 S. W. (2d) 559; Goodman v. Wilson, 129 Tenn. 464, 166 S. W. 752, 51 L. R. A., N. S., 1116; Trimble v. Bridges, 1943, 27 Tenn. App. 320, 180 S. W. (2d) 590; 35 Am. Jur. 1031, Master and Servant, Sec. 593, and others relating to the doctrine of respondeat superior, we conceive the present case to be within the category discussed in Frank v. Wright, 140 Tenn. 535, 205 S. W. 434, 435, wherein the Court quoted the rule as stated in Labatt, 6 Master and Servant, Sec. 2281a, as follows: "A servant may be presumed prima facie to have been acting in the course of his employment, wherever it appears, not only that his master was owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with its use in the master's business." In other words, if the attendant circumstances disclose that a vehicle is being operated by one's servant under conditions normal to its customary use, the presumption arises that the same was being operated within the scope of the driver's employment. We are accordingly of the opinion that Assignments of Error Nos. 5, 6 and 7, which pertain to the application of the doctrine of respondeat superior, are without merit and should be overruled.

██ Upon consideration of the question of negligence, we are impelled to the conclusion that there was insufficient evidence to warrant a submission of the case to the jury. Under the authority of De Glopper v. Nashville Ry. & Light Co., 123 Tenn. 633, 134 S. W. 609, 611, 33 L. R. A., N. S., 913, "In every action for damages resulting from injuries to the plaintiff, alleged to have

been inflicted by the negligence of the defendant, it is incumbent upon the plaintiff to establish by a preponderance of the testimony, three propositions: (1) A duty which the defendant owes to him. (2) A negligent breach of that duty. (3) Injuries received thereby, resulting proximately from the breach of that duty.

"If he aver that the duty which the defendant owes him arises out of a particular relationship, or that the negligence constituting, its breach consists of a particular act, omission, or thing, he must prove his case substantially as averred. This may be done, either by direct testimony of witnesses who know the facts, or by direct proof of indirect, but correlated, facts from which the duty owing him, the injury done him, the negligence of defendant, and its proximate causal connection with the injury may be reasonably inferred. When such method of establishing liability is resorted to, negligence is never inferred from the mere fact of the injury; but the act which produced it, and defendant's negligence, and the injury must all be shown, and the nexus between them must appear in the relationship of cause and effect."

Now in the instant case, the plaintiff, in his declaration, alleges, "Plaintiff sues the defendant, Hobert Delaney, for five ($5,000.00) thousand dollars damages for that on or about the 26th day of December, 1945 at the corner of Tenth and Market Streets in the City of Chattanooga, Tennessee, wrongfully and negligently ran and drove an automobile then and there under defendant's control, upon, into, and against plaintiff's person. The plaintiff had just stepped from the sidewalk at said intersections and was in the driveway of the Union Bus Terminal when the said automobile of defendant, under defendant's control, was being driven backwards when it ran into, upon and against the plaintiff." There is no proof whatever

that defendant's automobile was moving either forward or backwards at the time of the accident or how it came to be upon the body of plaintiff at the time he regained consciousness. The proof does show that the pavement at this point was covered with ice and there are many theories which might be advanced as to how the plaintiff came in contact with the automobile and suffered the injuries complained of. But to adopt any one of them would be to resort to pure conjecture.

■ ■ In Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911, a case presenting a similar dilemma, this Court said, "An automobile is not a 'dangerous instrumentality,' as that term is used in the law of negligence. The rule of res ipsa loquitur is not applicable in this case." It was there held that any finding by the jury that the death of plaintiff's intestate was proximately caused by the negligence of the defendant "would necessarily be based on speculation and conjecture." According to the well established rule of law, a verdict cannot stand on such basis. Buckeye Cotton Oil Co. v. Campagna, 146 Tenn. 389, 396, 242 S. W. 646; Chicago, M. & St. P. Railroad Co. v. Coogan, 271 U. S. 472, 473, 478, 46 S. Ct. 564, 566, 70 L. Ed. 1041, 1045; Patton v. Texas & P. Railway Co., 179 U. S. 658, 663, 21 S. Ct. 275, 45 L. Ed. 361, 364; Pennsylvania Railroad Co. v. Chamberlain, 288 U. S. 333, 344, 53 S. Ct. 391, 395, 77 L. Ed. 819, 825; Hart v. Union City, 107 Tenn. 294, 64 S. W. 6; Pryor v. Cincinnati, N. O. & T. P. Railway Co., 2 Tenn. Civ. App. 198; Virginia & S. W. Railway Co. v. Hawk, 6 Cir., 160 F. 348; Williams v. Southern Railway Co., 130 N. C. 116, 40 S. E. 979; Hughes v. Cincinnati, N. O. & T. P. Railway Co., 91 Ky. 526, 16 S. W. 275; Louisville & N. Railroad Co. v. Dillehay, 3 Tenn. App. 476; Standard Oil Co. v. Roach, 19 Tenn. App. 661, 94 S. W. (2d) 63.

■ Other authorities relating to this proposition are discussed in Lytton Davis, by next friend, etc., v. Phillip E. McNeil, et al., Knox County Law, decided by this Court at the present term. This, we believe unnecessary to reiterate, but, adhering to the determinative principles of that case, hold that the doctrine of res ipsa loquitur, not applying to suits of this nature, it is incumbent upon plaintiff to prove the act of negligence on the part of the defendant, upon which he relies. In absence of such proof, it becomes the duty of the trial Court to withdraw the issues from the consideration of the jury.

Accordingly the judgment of the lower Court will be reversed, a verdict here directed, and the suit dismissed. The plaintiff and the sureties upon his prosecution bond will pay all costs of the cause, including the costs of this appeal.