# JOE N. MOON v. SUMMERFIELD K. JOHNSTON.

## ET&WNC TRANSPORTATION COMPANY. v. SUM-MERFIELD K. JOHNSTON, 337 S. W. (2d) 464.

Eastern Section. November 3, 1959.

Certiorari Denied by Supreme Court June 6, 1960.

210

Whitaker, Hall & Haynes, Chattanooga, for plaintiffs in error.

Milligan, Milligan & Hooper, Chattanooga, for defendant in error.

HOWARD, J.  In these consolidated tort actions the plaintiffs, Joe N. Moon and ET & WNC Transportation Company, sued the defendant, Summerfield K. Johnston, for damages, the former suing for personal injuries, and the latter for property damages.  The injuries and damages were sustained when a loaded tractor-trailer owned by the Transportation Company and driven by Moon collided with a 2000 pound Hereford bull on U. S. Highway No. 11, about 4 miles west of the City of Cleveland, Tennessee, on the night of October 4, 1957. U. S. Highway No. 11, a heavily traveled two-lane thoroughfare, runs east and west, and the tractor-trailer, whose speed was estimated at from 48 to 50 miles per hour, was traveling in an easterly direction, having previously left Chattanooga with an 18,000 pound cargo to be delivered in Knoxville.  The weather was clear and the highway approaching the point of the accident was straight for approximately one-half mile, with nothing to obstruct the driver's vision.  The accident occurred about 7:45 P.M. when the left front of the tractor struck the bull as he was crossing the highway, approaching from the driver's left.  As result of the impact, the driver lost control of the tractor-trailer which ran completely off the road and

overturned, injuring the driver and damaging both the vehicle and cargo. Except for a bloody nose, the bull escaped injury.

The bull was owned by the defendant, Summerfield K. Johnston, who owns a large farm located on the south side of the highway, being adjacent thereto for a distance of approximately one mile. An open 20 foot lane, with well constructed fences on each side, leads from the highway south to the defendant's residence and farm buildings. These fences, which are 4' high, are constructed of four 1 x 6" planks nailed to Locust posts. The fence on the east encloses a pasture in which the bull and several of the defendant's horses had been kept for about two weeks. There are two 12' gates in this fence, one being located near the defendant's barn and the other about 75 yards from the highway. The latter gate, through which the bull escaped, is constructed of five 1 x 3's and opens on hinges toward the lane. This gate is securely braced and fastened by pushing a latch into a groove on the fence post. This latch, which is a three foot 1 x 4" board, slides back and forth on the third rail of the gate, and when pushed in all the way, the end extends about 1 inch beyond the grove. The bull escaped sometime after 7 P.M. and was seen by a relative of defendant's herdsman walking west on the highway about 7:30. This relative telephoned the herdsman who lived near the defendant's home, and on being informed that the bull was out, he left immediately to find him. On driving north on the open lane, the herdsman discovered that the gate nearest the highway, through which the bull had escaped, was open, and the latch pushed in all the way as if the gate were fastened. He closed the gate to keep the other stock from escaping. In the meantime the

accident had occurred about 1500 feet west of the lane, and on reaching the scene, the herdsman took charge of the bull and led him to a barn nearby.

Plaintiffs' declarations allege in substance that the accident occurred when the bull, owned by the defendant, ran into the highway immediately in front of the tractor-trailer, causing said vehicle to collide with said bull; that the defendant, his agents and servants, acting within the scope of their employment, negligently failed to properly inspect and maintain the gate through which the bull escaped, the said gate being insecurely or defectively closed; that the defendant, his agents, etc., knew or should have known of the bull's escape, and failed to use reasonable care in locating the bull or in removing him from the highway; that the gate through which the bull escaped was under the exclusive control of the defendant, his agents, etc., whose negligence was the proximate cause of the injuries and damages sustained.

Defendant filed a plea of general issue and numerous special pleas in which all allegations of negligence were denied. Defendant averred that the gate through which the bull escaped was well constructed and conformed to the highest standards, that the gate was inspected and found to be properly closed only a few minutes before the bull escaped, and there was an opportunity for an intruder to have gone through the gate and left it open. He further averred that the driver of the tractor-trailer was guilty of contributory negligence in not keeping a lookout ahead, in failing to have his vehicle under proper control, and that he was driving at an excessive rate of speed in violation of the State Speed Statutes regulating the speed of trucks on public highways.

Thus, the issues having been formed, the cases proceeded to trial before a jury.

At the conclusion of all the evidence, the defendant moved for directed verdicts, which the trial judge sustained on the ground that there was no material evidence showing negligence on the part of the defendant or his employees in permitting the bull to escape. Thereafter, plaintiffs filed motions for a new trial, which were overruled, and this appeal in error was prayed, granted and perfected. Plaintiffs have assigned 4 errors, the first being that the trial judge erred in directing verdicts for the defendant as there was sufficient evidence on which the cases should have gone to the jury.

In support of the first assignment it is urged that because (1) there was no notch in the latch to keep it from sliding, the gate could have been opened by the bull, (2) the gate was not securely fastened by a chain or wire, and (3) the latch was not completely inserted into the groove, the jury could have found from any one or more of these omissions that the defendant was negligent.

As we view the record, there was not the slightest evidence to support an inference that the absence of a notch in the latch, or its position on the gate, had any causal connection whatsoever with the bull's escape. In fact, there was no evidence from which it could be inferred that the bull ever touched the latch, and the argument that the jury could have found that he manipulated the latch and caused the gate to open, is not only speculative but contrary to reason, and must be rejected. Likewise any inference which the jury might have drawn from the absence of a chain or rope on the gate would be based on mere conjecture, under the circumstances.

As previously pointed out, the latch when pushed in all the way extended beyond the gate post, and according to the undisputed proof, the latch was in this position approximately 45 minutes previous to the bull's escape. We quote a portion of the testimony of the defendant's herdsman, Bert West, who was a witness for the plaintiffs, as follows:

"Q. I will ask * * * did you receive some notice of the bull escaping or anything? A. Got a call, yes, sir.

"Q. When did you get a call? A. A little while before the accident.

"Q. Do you know how long, approximately? A. I will say * * * 10 or 15 minutes, something like that.

"Q. And what notice did you receive? That was before the accident you say? A. Someone called me from my mother's, either my mother or sister or brother, one, called over there.

"Q. And what advice did you receive * * *? A. Said we had a bull out on the highway.

*    *    *    *    *    *

"Q. Before going to the question of the accident, I will ask you how long it had been since you saw that gate before you received that call?

*    *    *    *    *    *

"A. Forty-five minutes, something like that, I believe.

"Q. Approximately 45 minutes before you had seen the gate? A. Yes, sir.

"Q. How did you happen to see the gate? A. Well, I was driving down, I mean I had been down to McDonald going back stopped there, I stopped at the gate.

"Q. Did you have anyone with you? A. Yes, sir.

"Q. Who did you have with you? A. Had my wife, son and my sister-in-law's little boy.

"Q. What was the purpose of your stopping there? A. Little boy wanted to look at the bull.

\* \* \* \* \* \*

"Q. And did you stop and look at the bull? A. Yes, sir.

"Q. At that time was the gate open or was it closed? A. It was closed.

\* \* \* \* \* \*

"Q. About how far were you from the gate? A. Say about six or seven feet, six feet.

"Q. And did the gate appear to be latched at that time? A. Yes, sir.

"Q. Could you tell whether the latch was in it a little ways or was it all the way in? A. It was all the way.

"Q. Could you tell from where you were sitting? A. Yes, sir.

"Q. How could you tell? A. Well, I could see it.

"Q. You could see it? A. Yes, sir.

"Q. Well, when that latch goes into that groove and comes out can you tell by looking at it from the

road whether it's just a little way in or all the way in? A. Yes, sir.

"Q. How can you tell? A. Sticking through, say, about a half inch through on the other side."

This witness further testified that the bull was very gentle and had never made any previous attempts to escape. He also testified that all of the defendant's gates and fences were in good condition, and that they were inspected daily.

Nor was there any damage to the gate resulting from the bull's escape, though the gate was open and the latch pushed into a closed position, indicating that someone had previously opened the gate and had failed to properly close and fasten it.

■ It seems to be the rule in this State that where the owner of animals negligently allows them to run at large, he is liable for their resulting damages. Wilson v. White, 20 Tenn. App. 604, 102 S. W. (2d) 531. But he is not liable if without his fault the animals have escaped from a pasture enclosed by a lawful fence or by an ordinary fence such as is generally required to restrain that kind of stock. Wilson v. White, supra. See also 2 Am. Jur. Sec. 60, pp. 738, 739.

■ After reviewing the facts in the most favorable light to the plaintiffs, and applying the foregoing rule thereto, we find, as did the trial judge, that there was no substantial evidence, either direct or circumstantial, showing that the bull escaped by reason of defendant's negligence.

■ Moreover, negligence is never presumed from an accident alone, but must be proved by either direct or

circumstantial evidence, or both. Vinson v. Fentress, 33 Tenn. App. 359, 232 S. W. (2d) 272; Oliver v. Union Transfer Co., 17 Tenn. App. 694, 71 S. W. (2d) 478; Nohsey & Schwab v. Slover, 14 Tenn. App. 42; Smith v. Fisher, 11 Tenn. App. 273. Nor is a jury permitted to speculate or guess as to the proximate cause of injury, but there must be evidence of a material and substantial nature from which negligence can be determined. Lawson v. City of Chattanooga, 37 Tenn. App. 309, 263 S. W. (2d) 538; Delaney v. Turner, 34 Tenn. App. 380, 237 S. W. (2d) 965. Furthermore, under the "scintilla rule" as applied in our practice, a case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. Brenizer v. Nashville, C. & St. L. Ry., 156 Tenn. 479, 3 S. W. (2d) 1053, 8 S. W. (2d) 1099; Mut. Benefit Health & Acc. Ass'n v. Denton, 22 Tenn. App. 495, 124 S. W. (2d) 278.

█ The rule is also well settled that where there is no evidence of actionable negligence, or where all the elements necessary to make out a prima facie case of actionable negligence are lacking, it becomes a question of law for the Court and not an issue of fact for the jury. Lawson v. City of Chattanooga, supra; Norman v. Southern Ry. Co., 119 Tenn. 401, 104 S. W. 1088; Young v. Dozier, 4 Tenn. App. 148; Hutchens v. Nat. Fireworks Distributing Co., 7 Tenn. App. 575.

█ Likewise we find no merit in assignment of error No. 2 insisting that the cases should have been submitted to the jury under the doctrine of res ipsa loquitur, because there were no facts from which negligence could be inferred, as in McCloud v. City of La Follette, 38 Tenn. App. 553, 276 S. W. (2d) 763, upon which plaintiffs rely.

██ The true purpose of the doctrine of ''res ipsa loquitur'' is to require the defendant at his peril to explain the nature and circumstances of the incident, but if he shows there was no evidence of negligence, then the Court should direct a verdict. North Memphis Savings Bank v. Union Bridge & Const. Co., 138 Tenn. 161, 196 S. W. 492; Oliver v. Union Transfer Co., 17 Tenn. App. 694, 71 S. W. (2d) 478.

In the instant cases, the undisputed proof shows that only a few minutes before the bull's escape he was seen grazing leisurely in the pasture, and that at the time the gate was securely fastened; that neither his escape nor the accident was foreseeable. See Heaton v. Kagley, 198 Tenn. 530, 281 S. W. (2d) 385.

In Delaney v. Turner, supra [34 Tenn. App. 380, 237 S. W. (2d) 968], the plaintiff was struck by a taxicab in a driveway to the bus terminal in Chattanooga, and it was alleged that the taxicab backed up and hit plaintiff, but there was no proof to this effect, though on recovering consciousness, plaintiff found himself under the taxicab. Plaintiff failed to prove any acts from which negligence could be inferred, and rejecting the doctrine of res ipsa loquitur, this Court held:

"In Nichols v. Smith, 21 Tenn. App. 478, 111 S. W. (2d) 911, a case presenting a similar dilemma, this Court said, 'An automobile is not a ''dangerous instrumentality,'' as that term is used in the law of negligence. The rule of res ipsa loquitur is not applicable in this case.' It was there held that any finding by the jury that the death of plaintiff's intestate was proximately caused by the negligence of the defendant 'would necessarily be based on

speculation and conjecture.' According to the well established rule of law, a verdict cannot stand on such basis. (Citing numerous cases.)

"Other authorities relating to this proposition are discussed in Lytton Davis, by next friend, etc., v. Phillip E. McNeil, et al., Knox County Law, decided by this Court at the present term. This, we believe unnecessary to reiterate, but, adhering to the determinative principles of that case, hold that the doctrine of res ipsa loquitur, not applying to suits of this nature, *it is incumbent upon plaintiff to prove the act of negligence on the part of the defendant, upon which he relies. In absence of such proof, it becomes the duty of the trial Court to withdraw the issues from the consideration of the jury.*" (Emphasis supplied.)

By assignment of error No. 3, insistence is made that there was evidence from which the jury could have found that defendant's herdsman failed to use reasonable diligence in locating and taking the bull in charge after being informed of his escape.

■ The undisputed proof shows that the defendant's herdsman received notice of the bull's presence on the highway approximately 10 minutes before the accident; that the herdsman immediately got in his car and started toward the highway, and except for stopping to close the gate to keep the other stock from getting out, he proceeded with diligence in search of the bull; that when he found the bull the accident had already occurred. There was no proof that the herdsman could have reached the bull before the accident, or that the accident could have been avoided had he not stopped to close the gate. Here,

as previously pointed out, negligence cannot be presumed, and the undisputed proof showing that the herdsman acted with reasonable diligence, there were no facts from which the jury could have inferred negligence.

Finally, by assignment of error No. 4, plaintiffs complain because the trial Court sustained defendant's objections to the following hypothetical questions asked one of defendant's witnesses, Elgie Stone, an experienced farmer:

"Q. Mr. Stone, I don't believe you are exactly answering my question. I said do you consider a gate, assume that a gate is constructed so that a bull can rub up against it and push it open without breaking or damaging any part of the gate—

"Mr. Con Milligan: (Interposing) If your Honor please, that's a hypothetical question, he hasn't got the facts in here to support it.

"The Court: We have no proof of that.

\* \* \* \* \* \*

"Mr. Haynes: I am not asking about that gate, I am asking him a question about whether he considers a gate safe if it can be pushed open, whether he—

"The Court: (Interposing) That question is improper because we don't know that, that's a hypothetical question and he didn't know it was pushed open or exactly how it was done.

"Mr. Haynes: We note an exception to not being permitted to ask that question."

■ ■ As pointed out, the questions assumed facts not in evidence. There was no proof that the bull pushed the gate open, and for this reason the defendant's objections were properly sustained. Sepaugh v. Methodist Hospital, 30 Tenn. App. 25, 202 S. W. (2d) 985; 32 C. J. S. Evidence sec. 552, p. 359. Moreover, the record fails to show how the witness would have answered the question, and for this additional reason this assignment must fail. Rice-Stix Dry Goods Co. v. Self, 20 Tenn. App. 498, 101 S. W. (2d) 132; Weeks v. McNulty, 101 Tenn. 495, 48 S. W. 809, 43 L. R. A. 185, 70 Am. St. Rep., 693; Stacker v. Louisville & N. Railroad, 106 Tenn. 450, 61 S. W. 766.

It results for reasons indicated that all assignments of error will be overruled, and the judgments are affirmed at costs of plaintiffs-in-error.

McAmis, P. J., and Hale, J., concur.