# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### February 2000 Session

## ROBERT CHAD BLAYLOCK v. LLOYD NASH dba PEOPLES STOCKYARD

**Appeal from the Circuit Court for Putnam County**
**No. 98 J 0165      John A. Turnbull, Judge**

-------

**No.  M1999-00568-COA-R3-CV - Filed September 14, 2000**

-------

This negligence action arises out of a collision between a cow and a car driven by the plaintiff.  The trial court granted summary judgment to the defendant, the alleged owner and operator of a stockyard from which the cow supposedly escaped.  We affirm the trial court's decision finding that the plaintiff presented no evidence that the defendant breached his duty of care.  However, we do not find that the plaintiff's appeal of the trial court's decision was frivolous.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and WILLIAM C. KOCH, JR., joined.

William L. Draper, Cookeville, Tennessee, for the appellant, Robert Chad Blaylock.

John T. Rice, Chattanooga, Tennessee, for the appellee, Lloyd Nash, dba Peoples Stockyard.

### OPINION

On Saturday night, March 7, 1998, Robert Blaylock was driving his Chevrolet Camaro in Cookeville, Tennessee when, around 9:00 p.m., his car collided with a cow that was in the middle of the road.  The accident occurred while Mr. Blaylock was on Jefferson Avenue in front of a stockyard business known as the People's Stockyard which, Mr. Blaylock alleged, is owned and operated by Lloyd Nash.  Mr. Blaylock ("Plaintiff") brought this action against Mr. Nash, d/b/a People's Stockyard, ("Defendant") charging that Defendant breached his duty to keep and maintain control over this particular cow and, specifically, to keep the cow off the public roads.

Defendant filed a motion for summary judgment attaching a Statement of Undisputed Facts by Defendant in which it is asserted that neither Mr. Nash nor People's Stockyard owned the white cow that Plaintiff's car hit, that neither had prior knowledge of the propensity of the animal, that Plaintiff was compensated by his insurance carrier for the property damage, that Plaintiff did not

have his vehicle repaired, and that Plaintiff subsequently traded in his vehicle on a newer one and received the same value on a trade-in as he had received from the insurance carrier for damages.

The evidence in the record consists of the depositions of the parties, Mr. Nash and Mr. Blaylock, as well as three affidavits presented by Plaintiff in his memorandum opposing summary judgment. In the first of these affidavits, a witness to the accident, Jim Shake, asserted that at the time of the accident, he was driving on Jefferson Avenue and he saw the cow coming from the direction of the stock barn. He said that after the cow was hit, a man with a Bob-Cat machine came from the stock barn, picked up the cow, took it back to the stock barn and put it in a pen there.

The affidavits of Barbara Thomas and Kenneth Clement were also attached to Plaintiff's memorandum opposing summary judgment. According to Ms. Thomas, an owner of an oil and lube business across the street from People's Stockyard, a white cow had crossed Jefferson around 3:00 p.m. on the day of the accident. Ms. Thomas called the police, and Officer Kenneth Clement stated in his affidavit that he searched the area but found no evidence of the cow around 3:00 p.m. However, at approximately 6:00 p.m., Officer Clement first spotted a white cow by itself in front of the sale barn. He and another officer attempted to drive the cow into the sale barn. Officer Clement said that, at about 6:30 p.m., he called someone that he thought was connected with the stockyard and was told that the cow would be taken care of. The next time he saw the cow was on that same night after Plaintiff had hit it.

Officer Clement confirmed that a man brought a front-end loader across Jefferson from the sale barn and took the cow there and placed it in a pen. Plaintiff also confirmed this story. In his deposition, Plaintiff testified as follows regarding the disposal of the cow:

> . . . All I know is they were having a hard time . . . until somebody got an idea to go over to the stockyard, and they got a bulldozer, a tractor over there with a scoop on the end of it.
>      And they brought it from the stockyard over to the Class-A Oil & Lube and scooped the cow up in the scoop and just took it over there, and as far as I'm concerned – I was told it was dumped over there in a stall and it was later shot. That's what I was told.

While in his answer, Defendant asserted that "he is not the only owner, nor the only operator of People's Stockyard," Defendant stated in his deposition that he had no ownership in the stockyard but that he was only a manager of the sale of livestock. He later explained that he had no ownership in the land but that he did draw a commission from the sale of the cattle. He said that it was his job to specify the bottom price for the cattle. Defendant stated that he had been in this position for only twelve years though the stockyard had been operating since 1947.

Defendant stated that in addition to managing the stockyard sales, he is an agent for a packing company for whom he buys stock at the weekly stockyard sales. Defendant testified that there is a building thirty yards from the stockyard which he uses to store the cattle that he buys at the

stockyard sales for his clients before those clients come to retrieve the cattle. This building can house up to 300 cattle.

Defendant testified that, for the weekly sale, the stock are brought to the stockyard on Tuesday mornings and then they are sold every Tuesday afternoon. He stated that he leaves on Wednesday morning by which time there are no cattle left. Defendant then stated that if there are any cattle at the stockyard past Wednesday, they are his and not the stockyard's.

A. If [animals were] there on Friday, they would not be the stockyard's.
Q. Whose would they be?
A. They would be Lloyd Nash's, if they [were] there on Friday.
Q. If they were there any day past Wednesday, they would belong to you. Is that what you're saying?
A. Unless we had a feeder sale.

Defendant went on to say that the stockyard had only five or six feeder sales per year and that there had been one the first Friday in March but that those feeder cattle should have been gone the following Saturday by noon.

Defendant said that, on the afternoon before the accident occurred, he had gotten a call from a woman who worked at the oil and lube shop notifying him about a loose cow. He called the night watchman at the stockyard who later informed Defendant that someone not connected with the stockyard had loaded the cow on a truck and taken it away. Defendant stated that if the cow had been his, he would have gladly taken care of it since he had insurance to cover this type of thing. However, he had nothing to do with the cow getting to the road or being picked up. Neither he nor the night watchman on duty had any idea who picked up the injured cow. He stated that there were some Charolais heifers, the type of cow that was identified to have caused the accident, which were fenced within one fourth of a mile from the stock barn.

Regarding the ownership of the cow, Defendant made the following statement in his deposition:

I didn't have any animals out. And I wouldn't have had [any] animals like that in a barn. It's somebody else's besides mine. That's what I told them all the time. I mean, you know, there's cattle all around that stock barn. What keeps one from crawling out of a fence? It [isn't] Lloyd Nash's when it crawls out of a fence.

Defendant stated that all the stockyard animals are tagged for identification purposes and that if any cow was missing, he would have realized it when its buyer tried to pick up his load. Defendant agreed that the stockyard is responsible for the stock while it is in the process of being sold.

Defendant remembered a 1998 incident when a bull escaped from the stockyard's shipping barn. He called the police, and the bull was shot within ten minutes. Other than this, Defendant

-3-

could not recall any other incidents where animals had escaped. Defendant testified that, at the most, one or two animals escaped a year.

In this case, the trial court granted summary judgment to Defendant finding that there was no genuine issue of material fact. Summary judgment is appropriate when two prerequisites are met: first, there must be no genuine issue as to any fact necessary to resolve the substantive claim or defense embodied in the summary judgment motion, *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993), and second, the moving party must be entitled to a judgment as a matter of law. *Mansfield v. Colonial Freight Sys.*, 862 S.W.2d 527, 530 (Tenn. Ct. App. 1993); *see* Tenn R. Civ. P. 56.03.

The legal principles which guide an appellate court's review of a trial court's grant of a motion for summary judgment are well settled. Because the trial court's decision involves only a question of law, there is no presumption of correctness attached to this decision. *Hembree v. State*, 925 S.W.2d 513, 515 (Tenn. 1996). The appellate court must review the record anew to determine whether the requirements of Tennessee Civil Procedure Rule 56 have been met. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). In so doing, a court views the evidence in the light most favorable to the nonmoving party, allows all reasonable inferences in favor of that party, and discards all countervailing evidence. *Id.* (citing *Byrd*, 847 S.W.2d at 210-11). Summary judgment should be granted if the facts and conclusions permit a reasonable person to reach only one conclusion. *McCall v. Wilder,* 913 S.W.2d 150, 152 (Tenn. 1995). We turn to the relevant law and facts in the instant case to determine if only one conclusion can be reached.

"It is well recognized in Tennessee that 'the owner of escaping animals is not absolutely liable for damages to another's property but is only liable where he knowingly or negligently permits their escape or fails to recapture.' " *Way v. Bohannon*, 688 S.W.2d 89, 91 (Tenn. Ct. App. 1985) (citing *Trout v. Branham*, 660 S.W.2d 502, 505 (Tenn. Ct. App. 1983) *(*citing *Overbey v. Poteat*, 206 Tenn. 146, 332 S.W.2d 197 (1960))). *See* Tenn. Code Ann. § 44-8-401(a) (1993) (providing that "[i]t is unlawful for the owners of any livestock, as the same are commonly known and defined, to willfully allow the same to run at large in this state"). In this case, Plaintiff does not assert nor is there any evidence that Defendant, Mr. Nash, knowingly permitted this cow to escape. Thus, Plaintiff must show that Defendant is negligent. "To succeed with a negligence claim, the plaintiff must establish: (1) a duty owed by the defendant to the plaintiff, (2) conduct by the defendant falling below the applicable standard of care, (3) an injury or loss resulting from the defendant's breach of that duty, (4) causation in fact, and (5) legal cause." *Dillard v. Vanderbilt Univ.*, 970 S.W.2d 958, 960 (Tenn. Ct. App. 1998) (citing *Haynes v. Hamilton County*, 883 S.W.2d 606, 611 (Tenn. 1994)).

Initially, we must address the question of whether Plaintiff has presented sufficient evidence to get his claim past the summary judgment stage on the element of duty. As the court noted in a negligence suit brought by a plaintiff who was injured by an escaped cow, "the owner of a domestic animal is bound to exercise such reasonable care to prevent it from injuring another as an ordinarily careful and prudent person would exercise under the same circumstances." *Groce Provision Co. v. Dortch*, 49 Tenn. App. 57, 67, 350 S.W.2d 409, 413 (1961). In this case, Defendant's duty depends on, first, his position at People's Stockyard, specifically whether he had ownership or control of its cows and, second, the origin of the particular cow which caused this accident. If this cow is neither

the Defendant's nor the stockyard's, as Defendant maintains, then Defendant owed no duty to Plaintiff to keep this cow off the road. Furthermore, even if the cow was under the control of the stockyard but Defendant had no ownership in the stockyard, then Defendant is not the one who owed the duty. Viewing the evidence in the light most favorable to Plaintiff, allowing all reasonable inferences in favor of Plaintiff, and discarding all countervailing evidence, we find that the proof shows that material facts regarding Defendant's duty are in dispute.

We analyze first the issue of Defendant's position at the stockyard. In Defendant's deposition, he claimed that he had no ownership in the stockyard. However, he initially stated in his answer that he was not the "*only* owner" of the stockyard. He also later stated in deposition that he had no ownership in the land but that he did draw a commission from the sale of the livestock. It is unclear from Defendant's testimony how the stockyard business was structured or what was Defendant's official responsibility at the stockyard. Furthermore, it is certain from Defendant's testimony that, due to his business of buying cattle for a packing company, he was responsible for a building located thirty yards from the stockyard which was potentially full of 300 cows. Defendant stated that if any animals were there on Friday, they would be his and not the stockyard's. Therefore, we cannot conclude at this summary stage that Defendant's position was such that he did not owe a duty of reasonable care with regard to cows either from the stockyard or from the barn located thirty yards from the stockyard.

The other component of duty in this case involves the question of whether there was proof to show that this cow came from the stockyard or from the building that Defendant used to hold the cows he purchased in his position as an agent for a packing company. There is no evidence that this cow was tagged, and Defendant claimed that the cow was not his own nor was it otherwise connected with the stockyard. However, viewing this evidence in a light most favorable to Plaintiff, there is some circumstantial evidence that the cow was connected with the stockyard. Both Jim Shake and Officer Kenneth Clement, along with Plaintiff, asserted that, after the accident, someone from the stockyard retrieved the cow and placed it in a pen at the stockyard. Earlier on the day of the accident, Officer Clement had seen the cow in front of the sale barn at the stockyard. Later, Officer Clement telephoned someone that he thought was connected with the stockyard, and he was told that the cow would be taken care of.

The evidence does not mandate a conclusion that the cow was not owned or controlled by Defendant. Reasonable minds could differ and summary judgment is not appropriate. Thus, we turn to an analysis of the second element of negligence: breach of duty. We find that Plaintiff has failed to present any evidence of conduct by Defendant falling below the applicable standard of care or, in other words, conduct which constitutes a breach of Defendant's duty. Therefore, we are compelled to uphold the trial court's grant of summary judgment to Defendant on this basis.

In *Way v. Bohannon*, as in this case, a lawsuit arose from a collision between a cow and an automobile driven by the plaintiff. 688 S.W.2d 89 (Tenn. Ct. App. 1985). The plaintiff argued that the defendant farm owner was negligent for not properly tending to his livestock by allowing them to run at large on the public highway in violation of both Tennessee Code Annotated section 44-8-401 and the common law. *Id.* at 90. The court began by reviewing the standard for negligence

-5-

in these types of cases as summarized by *Moon v. Johnston*, 47 Tenn.App. 208, 337 S.W.2d 464 (1959):

> It seems to be the rule in this State that where the owner of animals negligently allows them to run at large, he is liable for their resulting damages. But he is not liable if without his fault the animals have escaped from a pasture enclosed by a lawful fence or by an ordinary fence such as is generally required to restrain that kind of stock.
>
> ....
>
> Moreover, negligence is never presumed from an accident alone, but must be proved by either direct or circumstantial evidence, or both. Nor is a jury permitted to speculate or guess as to the proximate cause of injury, but there must be evidence of a material and substantial nature from which negligence can be determined. Furthermore, under the "scintilla rule" as applied in our practice, a case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence.
>
> The rule is also well settled that where there is no evidence of actionable negligence, or where all the elements necessary to make out a prima facie case of actionable negligence are lacking, it becomes a question of law for the court and not an issue of fact for the jury.

*Way*, 688 S.W.2d at 90 (citing *Moon*, 337 S.W.2d at 469 (citations omitted)).

The court in *Way* concluded that there was "no evidence in the record in [that] case to show that defendant's fence was not 'lawful ... or ... ordinary such as is generally required to restrain [that] kind of stock.' Furthermore, plaintiff did not even make such an assertion." *Way*, 688 S.W.2d at 90. Finally, the court asserted that the plaintiff had "produced no proof that defendant either knowingly or negligently permitted his cattle to escape from the pasture. Plaintiff failed to produce even a 'spark or glimmer' of proof, much less the 'material and substantial evidence from which negligence can be determined.' " *Id.* at 91.

Likewise, in the case at bar, assuming that Plaintiff met his burden of proof with regard to Defendant's ownership or control over this particular cow, Plaintiff presented no evidence that Defendant's enclosure of this cow was not lawful or ordinarily such as is generally required to restrain cattle. *See id.* at 90. Indeed, the record's only reference to this enclosure was from Defendant's deposition testimony where Defendant stated that he had a building where he kept cows thirty yards from the stockyard. There was no indication in the record that any enclosure was inadequate in any way. To reiterate, "negligence is never presumed from an accident alone but must be proved by either direct or circumstantial evidence, or both." *Moon*, 337 S.W.2d at 469; *Troutt v. Branham*, 660 S.W.2d 502, 506 (Tenn. Ct. App. 1983). In this case, there is neither direct nor circumstantial evidence of a breach of duty on the part of Defendant, Mr. Nash. As has been stated in a case involving a highway collision between a car and a horse, "[one] is not liable, if without his fault, the animals have escaped . . . [T]he doctrine of res ipsa loquitur does not apply to actions of this nature." *Rodgers v. Webb*, 335 F. Supp. 584, 585 (E.D. Tenn. 1971). Thus, we hold that the

trial court's grant of summary judgment must be affirmed because Plaintiff has presented no evidence from which a reasonable jury could find that Defendant breached his duty to Plaintiff.

Finally, Defendant asserts that we should declare Plaintiff's appeal frivolous and award Defendant damages pursuant to Tennessee Code Annotated section 27-1-122 (1980), which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that is 'devoid of merit,' *Combustion Engineering, Inc. v. Kennedy*, 562 S.W.2d 202 (Tenn.1978), or one in which there is little prospect that it can ever succeed." *Industrial Dev. Bd. of Tullahoma v. Hancock*, 901 S.W.2d 382, 385 (Tenn. Ct. App. 1995) (citing *Black's Law Dictionary* 601 (5th ed. 1979)). In the instant case, the argument in the trial court focused on the existence of a duty owed by Defendant to Plaintiff, specifically arising from Defendant's ownership or control of the cow. As we have discussed above, the absence of such duty was not so evident that we can say that an appeal of the trial judge's finding on the issue was frivolous.

We find that Defendant is entitled to summary judgment because there is no genuine issue of material fact with regard to Defendant's breach of duty. Plaintiff has presented no evidence that Defendant's conduct respecting the enclosure of this cow fell below the standard of care. While we find that the trial court's grant of summary judgment should be upheld on the issue of breach of duty, we do not find this appeal to be wholly devoid of merit. Accordingly, we decline to award Defendant damages for a frivolous appeal. Costs are taxed to Plaintiff/Appellant.

_____
WILLIAM B. CAIN, JUDGE