RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0175P (6th Cir.)
File Name: 03a0175p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

SANDRA MORRIS,
    *Plaintiff-Appellant,*

    *v.*          No. 01-5893

WAL-MART STORES, INC.,
    *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-02692—Diane K. Vescovo, Magistrate Judge.

Argued: November 4, 2002

Decided and Filed: June 4, 2003

Before: KEITH, KRUPANSKY, and CLAY, Circuit
Judges.

———————————

### COUNSEL

**ARGUED:** James M. Allen, FILDERMAN & ALLEN,
Memphis, Tennessee, for Appellant. W. O. Luckett, Jr.,
ROSSIE, LUCKETT, PARKER & LAUGHLIN, Memphis,
Tennessee, for Appellee. **ON BRIEF:** James M. Allen,
FILDERMAN & ALLEN, Memphis, Tennessee, for
Appellant. W. O. Luckett, Jr., Lorrie K. Ridder, David A.

Billions, ROSSIE, LUCKETT, PARKER & LAUGHLIN,
Memphis, Tennessee, for Appellee.

CLAY, J., delivered the opinion of the court, in which
KEITH, J., joined. KRUPANSKY, J. (pp. 14-25), delivered
a separate dissenting opinion.

———————————

### OPINION

———————————

CLAY, Circuit Judge. Plaintiff, Sandra Morris, appeals
from the district court's judgment granting the motion for
judgment as a matter of law in favor of Defendant, Wal-Mart
Stores, Inc., at the close of Plaintiff's case-in-chief in this
negligence action wherein Plaintiff seeks damages from
Defendant for the injuries that she allegedly sustained as a
result of a slip and fall on Defendant's premises. Because we
believe that when viewing the evidence and all permissible
inferences most favorably for Plaintiff, there is material
evidence to support a verdict for Plaintiff, we **REVERSE** the
district court's order and **REMAND** the case for trial.

### BACKGROUND

On September 27, 1998, Plaintiff and her husband, Michael
Morris ("Morris"), were shopping at Defendant's "Sam's
Club" store located in Memphis, Tennessee. Morris was
pushing the shopping cart and Plaintiff was slightly behind
Morris on his left hand side. The two were walking through
the freezer section of the store when, after rounding a corner,
Plaintiff slipped on a wet substance thought to be water and
fell next to a small portable freezer known as a "spot box."
At the time of her fall, Plaintiff was between Morris and the
spot box. Morris noticed Plaintiff's "feet go up" as she fell
while hitting the spot box and the cart that Morris had been
pushing. According to Morris, in the course of the fall
Plaintiff struck her legs on the spot box and shopping cart,
landed on her lower back and buttocks, and then lay
completely flat. Plaintiff attempted to pull herself up using

the cart that Morris was holding, but slipped half-way up and fell a second time. Plaintiff was allegedly screaming as these events occurred, and described the fall as "violent." (J.A. at 35, 72.)

Some of Defendant's employees approached the scene to lend assistance. Once Plaintiff was finally standing up, she noticed that her clothes were "soaked," including her shoes. Plaintiff testified that she believed that the liquid in which she fell was water from the spot box freezer. Plaintiff claimed that the water felt cold, but was unsure whether the cold feeling was attributable to the water temperature itself or to the surroundings inasmuch as she was in the freezer section of the store. One of the employees called for store manager Kenneth Kanizar, who arrived on the scene shortly thereafter. Kanizar ordered an employee to get a mop and clean up the liquid. Defendant's employee Betty Baird testified that she was the individual who cleaned up the water after Plaintiff fell. Baird stated that she used some paper towels to clean up the water which, by that time, was about ten inches in diameter and "[r]ight there under the drain of the freezer." (J.A. at 94.)

Kanizar took a statement from Plaintiff, which was written by Morris and signed by Plaintiff. The statement provided by Plaintiff at the time of the fall was read into evidence at trial and provided: "Turned corner in frozen food area and fall [sic] in water leaking from display cooler/freezer. Injured both knees, toes, back, hip, right hip, and swelling in both legs." (J.A. at 39.)

Plaintiff testified that Kanizar communicated to them that it was his belief that the liquid substance present on the floor was water that had leaked from the spot box freezer. Kanizar "pointed out" to Plaintiff and Morris that the plug on the bottom of the spot box freezer was out. (J.A. at 40.) Kanizar further communicated to Plaintiff and Morris that the spot box freezer was new and that he was afraid that it may not be functioning properly so he wanted it immediately removed

from the floor, particularly since it had not been "out but a very short period of time." (J.A. at 84.)

Morris escorted Plaintiff out of the store in a wheel chair provided by Defendant, and took her to a hospital emergency room. Plaintiff was discharged from the hospital after x-rays were taken and medication was prescribed for the pain. The following day Plaintiff was severely bruised and "could barely walk." (J.A. at 42.) She saw her doctor who advised Plaintiff to stay in bed and off of her feet for a week; Plaintiff complied with her doctor's advice.

Plaintiff filed this negligence action against Defendant in the circuit court of Shelby County, Tennessee on June 29, 1999, and Defendant removed the matter to the United States District Court for the Western District of Tennessee on August 9, 1999 on the basis of diversity of citizenship jurisdiction under 28 U.S.C. § 1332(a). Thereafter, the parties consented to the case being tried by a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(2), and the case proceeded to trial. Following Plaintiff's case-in-chief, Defendant moved for judgment as a matter of law, claiming that Plaintiff failed to proffer evidence to show that Defendant had notice, actual or constructive, of the water, and that Plaintiff could not rely upon the doctrine of res ipsa loquitur inasmuch as Plaintiff failed to demonstrate that Defendant was in exclusive control of the spot box freezer. Plaintiff argued that she was not attempting to show notice, and in fact admitted that she could not prove notice. Rather, Plaintiff claimed that she proffered evidence to show that Defendant created the dangerous condition by placing the new spot box out without a plug in it, and also argued that the doctrine of res ipsa loquitur applied. The district court took Defendant's motion under advisement.

The next day, the district court granted Defendant's motion on the record finding that Plaintiff failed to present sufficient evidence for a reasonable jury to conclude that Defendant created the dangerous condition, and that while the evidence did indicate that the spot box freezer had been in Defendant's

control, the evidence did not demonstrate that the spot box had been in Defendant's exclusive control for purposes of invoking the doctrine of res ipsa loquitur. Judgment was entered in favor of Defendant, and it is from this judgment dismissing Plaintiff's case upon Defendant's motion for judgment as a matter of law that Plaintiff now appeals.

## DISCUSSION

In a diversity case, when a Rule 50 motion for judgment as a matter of law is based on a challenge to the sufficiency of the evidence, we apply the standard of review used by the courts of the state whose substantive law governs the matter. *Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 506 (6th Cir. 1998). Here, Tennessee law governs the substance of the matter, and under Tennessee law, when considering a motion for a directed verdict in a jury case, the trial court "must consider the evidence most favorably for the plaintiff, allow all reasonable inferences in plaintiff's favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for plaintiff, [the court] must deny the motion." *City of Columbia v. C.F.W. Const. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977).

"To establish negligence, one must prove: (1) a duty of care owed by defendant to plaintiff; (2) conduct falling below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McClung v. Delta Square Ltd. P'ship*, 937 S.W.2d 891, 894 (Tenn. 1996) (citing *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995)). In the context of a premises liability case, the Tennessee courts have stated that a business owner breaches the duty of care owed to its customers when it allows a dangerous condition or defect to exist on the premises if that condition or defect was created by the owner, operator or his agent; or, if the condition is created by someone else, when the business owner had actual or constructive notice that the dangerous condition or defect existed prior to the injury. *See Hardesty v. Serv. Merch. Co. Inc.*, 953 S.W.2d 678, 682 (Tenn. Ct. App. 1997); *Chambliss*

*v. Shoney's Inc.*, 742 S.W.2d 271, 273 (Tenn. Ct. App. 1987); *Benson v. H.G. Hill Stores, Inc.*, 699 S.W.2d 560, 563 (Tenn. Ct. App. 1985); *Jones v. Zayre, Inc.*, 600 S.W.2d 730, 732 (Tenn. Ct. App. 1980); *Paradiso v. Kroger Co.*, 499 S.W.2d 78, 79 (Tenn. Ct. App. 1973).

In the matter at hand, Plaintiff's counsel argued in response to Defendant's motion for judgment as a matter of law that Plaintiff had presented sufficient evidence for a reasonable jury to infer that Defendant had breached its duty to Plaintiff by creating the dangerous condition

by putting out their [sic] new spot box – that is in the record – without a plug in it – that is in the record – under which directly there was an issue of water. That is in the record. My client didn't put it out there. We don't know who put it out there. I think the jury can draw an inference from the testimony that it was new, that is [sic] was put out there without somebody checking the plug, which is exactly what I think they [the jury] would have drawn.

(J.A. at 115.) Counsel for Plaintiff went on to explain that

this is a res ipsa case. It is a box in the exclusive control of the defendant, which had it been put out there with the standard of care required, would not have been dangerous. In other words, it caused, but for the negligence of the defendant, this undangerous – not normally dangerous product became a dangerous product. And that is the res ipsa instruction. I would submit that it is a res ipsa case.

(J.A. at 116.) Simply stated, through the doctrine of res ipsa loquitur, Plaintiff sought to prove that Defendant breached the duty of care owed to her by creating the dangerous condition, the water on the floor in front of the open freezer plug, which thereby caused her injuries.

The doctrine of res ipsa loquitur is well steeped in Tennessee law. *See Casenburg v. Lewis*, 40 S.W.2d 1038

(Tenn. 1931). The doctrine is a rule of evidence, not a rule of law. *Quinley v. Cocke*, 192 S.W.2d 992, 996 (Tenn. 1946), *overruled on other grounds*, *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W.3d 86 (Tenn. 1999). That is, the doctrine of res ipsa loquitur is intended to assist a plaintiff who has no direct evidence of a defendant's negligence, *Provident Life & Accident Ins. Co. v. Prof'l Cleaning Serv., Inc.*, 396 S.W.2d 351, 356 (Tenn. 1965), by providing a specialized vehicle for considering circumstantial evidence in negligence cases. *Poor Sisters of St. Francis v. Long*, 230 S.W.2d 659, 663 (Tenn. 1950), *overruled on other grounds*, *Seavers*, 9 S.W.3d 86. The doctrine allows for "an inference of negligence where the jury has a common knowledge or understanding that events which resulted in the plaintiff's injury do not ordinarily occur unless someone was negligent." *Seavers*, 9 S.W.3d at 91 (citations omitted). "The weight of any inference to be drawn from the evidence is for the determination of the jury." *Seavers*, 9 S.W.3d at 91 (citing *Franklin v. Collins Chapel Connectional Hosp.*, 696 S.W.2d 16, 21 (Tenn. Ct. App. 1985)).

In *Seavers v. Methodist Medical Center of Oak Ridge*, the Tennessee Supreme Court stated that in order to invoke the doctrine of res ipsa loquitur, "the plaintiff must demonstrate that he or she was injured by an instrumentality that was within the defendant's exclusive control and that the injury would not ordinarily have occurred in the absence of negligence." 9 S.W.3d at 91 (citing *Provident Life & Accident Ins. Co.*, 396 S.W.2d at 354-55; *Sullivan v. Crabtree*, 258 S.W.2d 782, 784 (Tenn. Ct. App. 1953)). However, over thirty years before *Seavers* was decided, the Tennessee Supreme Court strongly questioned the "exclusive control" element of the application of res ipsa loquitur. That is, in *Provident Life & Accident Ins.*, 396 S.W.2d at 355-56 (hereinafter *Provident*), the case upon which *Seavers* relied, the Tennessee Supreme Court did indeed provide the definition of res ipsa loquitur as requiring that the instrumentality be in the exclusive control of the defendant; however, this definition was juxtaposed against a definition of res ipsa loquitur wherein exclusive control was not

required in order for the doctrine to apply. *See* 396 S.W.2d at 355. Specifically, the *Provident* court compared the definitions of res ipsa loquitur as follows:

> The rule of *res ipsa loquitur* has been defined in our cases in two general ways. In North Memphis Savings Bank v. Union Bridge & Construction Co*.,* 138 Tenn. 161, 177, 196 S.W. 492 (1917), it was defined thusly:

> Where the evidence shows an injury inflicted, and also the physical thing inflicting it, and that thing does not usually, or in the ordinary course, produce such a result where due care is exercised by those in charge of it, it may be inferred that those so in charge of the thing inflicting the injury failed to exercise such due care; that is, that they were guilty of negligence.

> The second general definition is found in the case of Sullivan v. Crabtree, 36 Tenn. App. 469, 473, 258 S.W.2d 782, 784 (1953):

> '[W]here the thing [causing the harm] is shown to be under the management of defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.'

*Provident*, 396 S.W.2d at 355 (alterations in *Provident*).

Significantly, after providing these two definitions, the *Provident* court went on to note that "many academicians" such as Prosser found fault with the word "control" when defining res ipsa loquitur, and specifically looked to the Restatement (Second) on Torts in finding "corroboration of Prosser's idea that control in the defendant is not a necessary element of the definition [of res ipsa loquitur]." *Provident*,

396 S.W.2d at 355. Borrowing from the Restatement (Second), the *Provident* court opined:

It is not, however, necessary to the inference [of negligence] that the defendant have such exclusive control; and exclusive control is merely one way of proving his responsibility. He may be responsible, and the inference may be drawn against him, where he shares control with another, . . . where he is under a duty to the plaintiff which he cannot delegate to another, . . . [and] where he is under a duty to control the conduct of a third person . . . . It may be enough that the defendant was formally in control . . . . Exclusive control is merely one fact which establishes the responsibility of the defendant; and if it can be established otherwise, exclusive control is not essential to a res ipsa loquitur case. The essential question becomes one of whether the probable cause is one which the defendant was under a duty to the plaintiff to anticipate or guard against.

396 S.W.2d at 355-56 (quoting Restatement (Second), Torts § 328d (1965)). Having recognized the two definitions of res ipsa loquitur, and specifically the distinction between the two definitions—the defendant's exclusive control over the instrumentality, the *Provident* court embraced the following "general rule:"

The general rule for all cases of circumstantial evidence–both ordinary cases and *res ipsa loquitur* cases–is that to make out his case, plaintiff does not have to eliminate all other possible causes or inferences than that of defendant's negligence; but it is enough if the evidence for him makes such negligence more probable than any other cause.

396 S.W.2d at 356 (citations omitted).

Thus, although in *Seavers* the Tennessee Supreme Court decided to cite as controlling law one of the definitions of res ipsa loquitur provided in *Provident*—the definition incorporating the requirement of "exclusive control," it is

clear that the "exclusive control" requirement was criticized by the *Provident* court. *See Seavers*, 9 S.W.3d at 91; *Provident*, 396 S.W.2d at 355-56. Indeed, since *Seavers*, while "exclusive control" has been recognized as a factor in the application of the res ipsa loquitur doctrine, it has also been noted that

[t]he "exclusive control" element of the res ipsa loquitur doctrine, if read too literally, is overly restrictive. Res ipsa loquitur cannot be applied unless the circumstances surrounding the injury indicate that the causal negligence was probably the defendant's, not that of another person. Evidence that the plaintiff was injured by an instrumentality that was within the defendant's exclusive control at the time is sufficient for this purpose. However, proving a defendant's exclusive control of an instrumentality when an injury occurs is not the only way to demonstrate the defendant's responsibility for the negligence. . . . Tennessee's courts do not view "exclusive control" as indispensable to the application of the res ipsa loquitur doctrine.

*Burton v. Warren Farmers Coop.*, 2002 WL 31039345, at *7 (Tenn. Ct. App. Sept. 12, 2002) (citations omitted).

The *Burton* court also recognized that "[t]he res ipsa loquitur doctrine is primarily useful in jury trials" inasmuch as it "provides a trial court with the framework for determining whether the plaintiff's evidence entitles him or her to get to the jury." *Id.* (citations omitted). In this regard, the court opined:

The role of the trial court is to determine whether the plaintiff's evidence is sufficient to permit a reasonable person to infer from the circumstances that negligence attributable to the defendant caused the plaintiff's injury. If the answer is no, the trial court may direct a verdict for the defendant. If the answer is yes, then the plaintiff can weather a motion for directed verdict, and the case will be submitted to the jury for it to decide whether to

choose the inference of the defendant's causal negligence or some other permissible or reasonable inference.

*Id.* (citations and footnotes omitted). The court further opined in this regard that a trial court may decline to submit a claim based on res ipsa loquitur theory to the jury "(1) if there is simply not enough experience to justify an inference that the defendant's negligence, more probably than not, caused the plaintiff's injury or (2) if, in the court's experience, it was not more probable that the plaintiff's injury was caused by negligence." *Id.* at n.10 (citing 1 Dan B. Dobbs, *The Law of Torts* § 155, at 373 (2001)).

Against this backdrop of Tennessee law, we conclude that the district court erred in granting Defendant's motion for judgment as matter of law at the close of Plaintiff's case-in-chief. When construing the evidence "most favorably" for Plaintiff, material evidence was presented to support a verdict for Plaintiff, and judgment as a matter of law therefore should not have been entered against her. *See City of Columbia*, 557 S.W.2d at 740.

As Plaintiff argued before the district court, based upon the testimony presented at trial, a reasonable jury could conclude that Defendant placed the new spot box freezer in the aisle without the plug properly secured thereby allowing water to leak from the freezer and thus creating the dangerous condition which lead to Plaintiff's fall and injury. For example, Plaintiff testified that the substance likely was water, that it was directly in front of the freezer plug, and that it felt cold to the touch. Testimony was also presented that manager Kanizar communicated to Plaintiff and Morris that the substance on the floor likely was water and that it had leaked from the spot box freezer. The written statement provided by Plaintiff and Morris at the scene also supported the claim that the water upon which Plaintiff slipped and fell had been leaking from the spot box freezer. Kanizar further communicated to Plaintiff and Morris that the spot box freezer was new, that he feared that it may not be functioning properly, and that he was therefore going to immediately

remove the box from the floor. Finally, Defendant's employee Baird, who wiped up the remaining water, stated that the puddle of water was about ten inches in diameter and "[r]ight there under the drain of the freezer." (J.A. at 94.)

The district court failed to view this evidence and all of its permissible inferences "most favorably" for Plaintiff when it granted Defendant's motion for judgment as a matter of law. For example, in concluding that Plaintiff's case failed inasmuch as Plaintiff failed to demonstrate that the spot freezer had been in Defendant's exclusive control for purposes of invoking the doctrine of res ipsa loquitur, the district court looked to the universe of possibilities as to how the spot freezer may have been left unplugged and allowed to leak. The district court erred in this regard inasmuch as the *Provident* court clearly instructs that

[t]he general rule for all cases of circumstantial evidence–both ordinary cases and *res ipsa loquitur* cases–is that to make out his case, *plaintiff does not have to eliminate all other possible causes or inferences than that of defendant's negligence*; but it is enough if the evidence for him makes such negligence more probable than any other cause.

396 S.W.2d at 356 (citations omitted) (emphasis added). And, as the *Burton* court instructs, a trial court may not grant a defendant's motion for directed verdict in a res ipsa loquitur case if "the plaintiff's evidence is sufficient to permit a reasonable person to infer from the circumstances that negligence attributable to the defendant caused the plaintiff's injury." 2002 WL 31039345, at *7 (citing Restatement (Second) of Torts § 328D(2)).

As noted above, we find that Plaintiff's evidence, particularly when viewed most favorably for Plaintiff, was sufficient allow a reasonable trier of fact to infer that Defendant's negligence in placing the new spot box freezer without the plug properly inserted, thus allowing water to leak therefrom, created the condition which caused Plaintiff to fall and be injured. Simply stated, the district court took an

"overly restrictive" approach when deciding that the spot box was in the "exclusive control" of Defendant, and failed to view the evidence in general most favorably for Plaintiff. *See id.* Of course, Defendant is free to renew its motion for judgment as a matter of law at the close of its proofs and, in light of evidence presented by Defendant, it may be proper for the district court to grant the motion at that time. *See id.* at n.11. However, at this point of the trial proceedings, we hold that the district court erred in granting Defendant's motion for judgment as a matter of law.

The negligence cases cited at length by the dissent are legally and factually distinguishable from the case before us, and thus do nothing to command a different outcome. Specifically, the Tennessee cases cited by the dissent support the proposition that exclusive control over an instrumentality is required in order to satisfy res ipsa loquitur. However, where the correctness of granting a motion for judgment as a matter of law is at issue, it is inappropriate to conclude that res ipsa loquitur does not apply when factual disputes remain as to how the accident occurred and whether the instrumentality was in the defendant's control. Because such factual disputes remain in this case, the application of res ipsa loquitur is a question for the jury to decide.

## CONCLUSION

For the above-stated reasons, we **REVERSE** the district court's judgment granting Defendant's motion for judgment as a matter of law, and **REMAND** the matter for trial.

_____

## DISSENT

_____

KRUPANSKY, Circuit Judge, dissenting. In this slip and fall case, the panel majority has determined that Sandra Morris has proved negligence pursuant to the doctrine of res ipsa loquitur to reverse the district court's award of judgment as a matter of law to store-owner Wal-Mart. Unfortunately, the majority's conclusion disregards the controlling weight of existing Tennessee law applying the doctrine of res ipsa loquitur to circumstances where the instrumentality that caused injury was purportedly under the exclusive control and management of the defendant and where the injury would not have occurred in the ordinary course of events if the defendant had used reasonable care and where the defendant failed to offer an explanation or proof that the injury was not caused by the defendant's exercise of due care over an instrumentality it purportedly exclusively controlled. Accordingly, I respectfully dissent.

Mrs. Morris averred that while shopping with her husband in the frozen-food section of a Sam's Club store she slipped and fell in water puddled near the open drain plug of a display cooler. The district court rejected as highly speculative the plaintiff's assertion that the cooler, here in issue, which was located in a high-traffic public area within a self-service commercial space, was exclusively controlled by defendant, concluding that such causal uncertainty could not bring the claim within the orbit of res ipsa loquitur. Specifically, plaintiff's inability to prove that Wal-Mart exercised exclusive control of the cooler was fatal to her prima facie case, disallowing the application of the reduced evidentiary burden afforded by the doctrine of res ipsa loquitur.

Relying on *Provident Life & Acc. Ins. Co. v. Professional Cleaning Service, Inc.*, 396 S.W. 2d 351 (Tenn. 1965), the majority has argued that it is enough for the application of res ipsa loquitur that Wal-Mart, more probably than not, controlled the instrumentality that caused Mrs. Morris' injury.

The majority reaches that conclusion without considering several decisions of the Tennessee courts mandating a stringent proof requirement of exclusive control as a shield against unreasonable jury speculation in cases, such as the one before this appellate panel, predicated on scant circumstantial evidence of causal injury in a busy public arena. *Provident Life* is inapposite to the instant case, involving as it did the question of whether a cleaning service, the *sole* occupants of a closed office building at 11:15 p.m., had negligently started a fire in an elevator trash-can while performing its cleaning duties. Contrary to the present dispute, the conclusion that the cleaning service in *Provident Life* had exclusive control of the trash-cans involved no speculation. Consequently, the majority's application of *Provident Life* to the instant case has imprudently released Morris from the necessary burden of proving a causal nexus between the offending cooler and defendant's alleged negligence.

Res ipsa loquitur is a form of circumstantial evidence allowing a plaintiff, upon proof of a *prima facie* case, to infer the defendant's negligence from the occurrence of an injury. *Quinley v. Cocke*, 192 S.W. 2d 992 (Tenn. 1946) (considering the res ipsa 'doctrine' as one of evidence and not of substantive law); *Seavers v. Methodist Med. Ctr. of Oak Ridge*, 9 S.W. 3d 86, 91 (Tenn. 1999). However, a jury cannot presume a defendant's negligence from the fact of an injury alone. *Id.* Application of the doctrine requires the injury, (1) to have been caused by some "thing," (2) under the exclusive control of the defendant, and, (3) which by its nature does not ordinarily result in injury when managed carefully.[1] *Armes v. Hulett*, 843 S.W. 2d 427, 432 (Tenn.Ct.

---

[1] Contrary to the majority's suggestion of a trend away from the requirement of *exclusive control* in res ipsa claims, the state of Tennessee has codified res ipsa loquitur for malpractice actions in T.C.A. § 29-26-115(c):

In a malpractice action as described in subsection (a) of this section there shall be no presumption of negligence on the part of the defendant. Provided, however, there shall be a rebuttable

App. 1992) (affirming summary judgment for defendant and finding res ipsa loquitur inapplicable where the defective pipe was not under the management or control of defendant plumber). If the plaintiff's injury could reasonably have occurred even without the defendant's negligence then the doctrine is inapplicable. *Cockrum v. State*, 843 S.W.2d 433, 438 (Tenn. Ct. App.1992); *Brown v. University Nursing Home, Inc.*, 496 S.W.2d 503, 509 (Tenn. Ct. App.1992).

As a means of avoiding jury speculation Tennessee courts have adhered to the rule that sole control by the defendant of the allegedly offending instrumentality is an "essential element of the res ipsa loquitur doctrine." *Towle v. Phillips*, 172 S.W. 2d 806, 808 (Tenn. 1943) (sustaining defendant's motion for a directed verdict in an airplane accident in which the plane provided dual controls thus barring the application of res ipsa loquitur). Within the context of res ipsa loquitur,

> it is not necessary that the defendant have control of the [object] at the time of the injury, but it is sufficient if he had exclusive control when the acts apparently causing the injury occurred, provided the plaintiff show that the condition of the [object] or its contents had not been changed after it left the defendant's possession.

*Boykin v. Chase Bottling Works*, 222 S.W. 2d 889, 897 (Tenn. Ct. App. 1949) (declining to find exclusive control over a bottle that exploded when removed from an ice box in defendant's restaurant as customers regularly served themselves from the icebox and third parties had access to the icebox and its contents). In the instant case, Morris provided no evidence that Wal-Mart had exclusive control over the cooler.

---

presumption that the defendant was negligent where it is shown by the proof that the instrumentality causing injury was in the defendant's (or defendants') *exclusive control* and that the accident or injury was one which ordinarily doesn't occur in the absence of negligence.

(emphasis added)

As in *Boykin*, Wal-Mart's customers in the case *sub judice*, had full access to the cooler and its contents. Morris averred no proof that excluded the possibility of third party interference in dislodging the cooler's drain plug. Morris had the burden of proving that either her actions or those of a third party did not contribute to or cause the alleged incident. Appellant did not meet this burden and, consequently, the district court did not err in refusing to apply the doctrine of res ipsa loquitur. *O'Brien v. Southern Bell Tel. & Tel*. Co., 259 S.W. 2d 554-57 (Tenn. Ct. App. 1952) (noting that res ipsa is not applicable to a slip and fall case and directing a verdict for the defendant).

From the plaintiff's proffered evidence a jury could not reasonably *infer* that Wal-Mart acted negligently. Yet, bootstrapping such an inference as the majority has done by lowering the standard of proof necessary for res ipsa loquitur "undermines [the State's] system of tort liability based on fault."[2] *Lamb v. State*, No. M1998-00910-COA-R12-CV, 2002 WL 31319755 (Tenn. Ct. App. Oct. 16, 2002). As the district court noted in oral hearing, Mr. Morris' testimony that he observed the plug to the cooler not completely closed, falls short of the necessary proof of exclusive control:

> [h]ere the jury would have to speculate as to whether Sam's Club or its employees removed the plug or failed to insert it properly. It is just as reasonable a conclusion that a customer could have removed it. This spot freezer was accessible to customers, the plug was near the base

---

[2]Tennessee courts have recognized the doctrine of res ipsa loquitur "cannot serve as a substitute for proof...because the plaintiff must place the instrumentality causing the harm under the exclusive control and management of defendants before res ipsa loquitur applies at all." *Greer v. Lawhon*, 600 S.W. 2d 742, 745 (Tenn. Ct. App. 1980) (quoting *Johnson v. Ely*, 205 S.W. 2d 759 (Tenn. Ct. App. 1947)). As the plaintiff in the instant case has failed to meet this standard she cannot use the res ipsa doctrine to establish proof that is absent. Allowing otherwise, as the majority enables, removes the necessity of demonstrating fault from tort liability and does not comport with the rule laid down by the Tennessee courts.

of the freezer. It was low to the ground. It was in the reach of children, children could have removed it. For all I know, it could have easily been bumped by a shopping cart when a customer turned the aisle and became dislodged in this manner.

Tennessee courts have long maintained a consistent rule against jury speculation in their res ipsa loquitur decisions.[3] While juries may draw inferences, Tennessee has recognized "an inference can be drawn only from the facts in evidence, and cannot be based on surmise, speculation, conjecture, or guess." *Benton v. Snyder*, 825 S.W. 2d 409, 414 (Tenn. 1992). "[N]or is a jury permitted to speculate or guess as to the proximate cause of injury." *Moon v. Johnston*, 337 S.W. 2d 464, 469 (Tenn. App. 1959). Valid and reasonable inferences must make "the existence of the fact to be inferred more probable than the nonexistence of the fact." *Underwood v. HCA Health Servs. of Tenn., Inc*., 892 S.W. 2d 423, 426 (Tenn. Ct. App. 1994). When two equally possible inferences exist, a jury cannot employ, as the majority opinion allows, guesswork, speculation, or conjecture to decide a case. *Stringer v. Cooper*, 486 S.W.2d 751, 756 (Tenn. Ct. App. 1972). The plaintiff bears the burden of proving her case and when two probabilities are at most "evenly balanced," the court must direct a verdict for the defendant. As the Tennessee Supreme Court observed in *Lindsey v. Miami Dev. Corp*., 689 S.W. 2d 856, 861 (Tenn. 1985):

> The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely

---

[3]In *Meadows v. Patterson*, 109 S.W. 2d 417, 420 (Tenn. Ct. App. 1937), the plaintiff's eye was injured in the course of surgery. The court determined that the plaintiff failed to establish the necessary prerequisite of exclusive control by the operating physician to allow for the application of the doctrine of res ipsa loquitur, noting that bringing the case before a jury "would have permitted the jury to speculate as to whether the injury occurred in the operating room where, as we have seen, plaintiff was under the control of defendant, whether it occurred in transit from the operating room to plaintiff's private room, or occurred after he was left in the custody of the nurse."

than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.

(quoting Prosser and Keeton, *Torts* § 41, at 269 (5th ed., 1984)). Furthermore, "[c]ourts need not submit to the jury negligence cases containing only a spark or glimmer of evidence that requires the finder-of-fact to make a leap of faith to find the defendant liable for the plaintiff's injury." *Psillas v. Home Depot, U.S.A., Inc.*, 66 S.W.3d 860, 866 (Tenn. Ct. App. 2001) (granting defendant's motion for summary judgment where the plaintiffs failed to demonstrate that their son would not have been injured had it not been for Home Depot's negligence, noting the public character of the premises and confirming the availability of res ipsa inference only when the instrumentality that caused the harm was within the defendant's exclusive control).

The record before this court indicated nothing more than the *possibility* that the defendant might have had control of the cooler. The plaintiff introduced no evidence to allay the district court's reasonable concern for the equivalent possibility of alternative causes for the puddle of water that precipitated plaintiff's injury. Without addressing the possible contribution of customer conduct in the store the appellant could not develop the necessary proof of defendant's control over the cooler and the district court's determination merely acknowledged this legal inadequacy. Contrary to the majority opinion, Tennessee courts recognize that in instances such as the case *sub judice*, proof of causation equating to a possibility is not sufficient as a matter of law to establish the required nexus between the plaintiff's injury and the defendant's presumed tortious conduct by a preponderance of the evidence. *Lindsey*, 689 S.W. 2d at 862. *See also, White v. Methodist Hosp. South*, 844 S.W. 2d 642, 648-49 (Tenn. Ct. App. 1992). Causation in fact is a matter of probability and as the court in *Lindsey* affirmed, a mere

possibility is not an affirmative basis for a finding of fact: "In the language of the law of evidence, that which is merely possible, standing alone and not offered as auxiliary or rebuttal testimony is immaterial to the ascertainment of the fact and so is inadmissible as evidence of that fact." *Id.*

In the instant case, the appellant did not call any Wal-Mart associates to testify that the plug was not properly inserted, nor did she introduce any expert testimony in an effort to prove that Wal-Mart failed to insure that the drain was properly plugged. Moreover, the appellant did not provide evidence of the length of time the hazard was present on the store floor, or of prior or constructive knowledge among Wal-Mart personnel. Finally, Morris produced no evidence that a customer could not have dislodged the plug prior to the incident. As a result, the district court properly concluded that a reasonable jury could not be permitted to speculate that Wal-Mart's negligence created the hazard.

The salient facts of the case *sub judice* are analogous to *Underwood v. HCA Health Services of Tennessee*, 892 S.W. 2d 423 (Tenn. Ct. App. 1994). Underwood brought a negligence action against the defendant cafeteria alleging injury when an ice dispenser cover struck her. *Id.* at 425. The court affirmed Underwood's directed verdict, because the plaintiff failed to introduce any proof that the defendant's employees, rather than the customers accessing the ice dispenser, caused the panel to become dislodged. In a statement, echoed by the district court in the case *sub judice*, the *Underwood* court noted that:

In order to determine that the hospital was negligent, the fact-finder would be required to speculate whether the hospital employees created the condition or whether it was caused by cafeteria customers. If the condition was caused by customers, the fact finder would be required to speculate whether the condition had existed long enough to have been discovered and corrected had the hospital been maintaining the dispenser properly.

*Id.* at 427. The district court, in the instant case, properly noted that res ipsa loquitur should not apply in the absence of evidence which would prevent a jury from having to speculate over whether the cooler's drain plug had become dislodged by appellee, a customer, a child or a shopping cart.

The majority opinion is certainly correct in its observation that "the doctrine of res ipsa loquitur is well steeped in Tennessee law." Yet, contrary to the majority's position, Tennessee law supports the general rule that a plaintiff must prove defendant had exclusive control over the instrumentality causing harm. Indeed, stretching back more than a half-century the Tennessee courts have recognized as *particularly inappropriate* the application of res ipsa to claims involving areas of 'high-traffic' public access with its attendant causal uncertainty.[4] *See Susman v. Mid-South Fair*,

---

[4] As the majority has interpreted Prosser and Keeton as endorsing the effort to generally dispose of the plaintiff's need to prove 'exclusive control,' it is instructive to remember their 'hornbook' conveys a more sober view of the disposition of cases such as the one at hand. As Prosser and Keeton explain,

> there are many accidents which, as a matter of common knowledge, occur frequently enough without anyone's fault....[A]n ordinary slip and fall...will not in [itself] justify the conclusion that negligence is the most likely explanation; and to such events res ipsa loquitur does not apply." (Prosser & Keeton, *Torts* (5th ed. 1984) § 39, p. 246.

A more recent treatise echoes the unsuitability of applying res ipsa to slip and fall cases, such as the instant dispute, unable to muster evidence to arrive at the conclusion that negligence explains the cause:

> "[S]ome fact patterns seem to be generally inappropriate for res ipsa. Courts usually think that the defendant's negligence is not a sufficiently likely explanation of events when the plaintiff, as an invitee in the defendant's place of business, falls on a slippery substance. Without more evidence, the possibilities are too strong that the defendant was not responsible for placing the substance there and that he did not have time to discover it and make it safe, so specific evidence on theses points is usually required.

Dan B. Dobbs, *The Law of Torts* (2001) §155. Where the evidence indicated, as it did here, that defendant's had only recently placed the cooler in the frozen food section of the store the possibilities are even

176 S.W. 2d 804 (Tenn. 1944) (granting motion for directed verdict in claim of injury at public amusement park and observing that the application of res ipsa required there be no reasonable inference but that the injury complained of was due to defendant's negligence and proof that the instrumentality causing injury was under the exclusive control of the defendant); *Oliver-Gill v. Krohn*, No. I-26029, 2003 WL 724433, at *4 (Tenn. Ct. App. March 4, 2003) (affirming jury verdict for the defendant builder in negligence suit brought by homeowner whose driveway was subsiding and finding no basis for a res ipsa inference that cause of subsidence was within defendant's exclusive control given the number of other contractors handling the soil work); *Jones v. Metro Elevator Co.*, No. W2000-02002-COA-R3-CV, 2001 WL 1683782 (Tenn. Ct. App. Dec. 31, 2001) (affirming inapplicability of charge of res ipsa loquitur for injury allegedly sustained by plaintiff while riding elevator in the public area of a building where landlord did not have exclusive control over the elevators in the building and had no actual or constructive knowledge of any danger associated with the elevator); *Smith v. Castner-Knott Dry Goods Co.*, 1997 WL 203605, *4 (Tenn. Ct. App. April 25, 1997) (affirming summary judgment for defendant department store finding res ipsa loquitur inapplicable for injury sustained when a mirrored tile fell and struck plaintiff while shopping concluding that evidence failed to indicate defendant's control over the object where the tile could have been defectively manufactured or improperly installed); *Mears v. H.J. Heinz Co.*, No. 02A01-CV-00058, 1995 WL 37344 (Tenn. Ct. App. Jan. 31, 1995) (affirming defendant's award of summary judgment where the defendant allegedly sustained an injury from eating defendant's soup in a public cafeteria because the defendant did not have exclusive control over the instrumentality, prepared and kept on the steam table hours before lunch and served in a cafeteria catering to at least 800 employees); *Hawkins v. Opryland, U.S.A. Inc.*, No. 01A01-9309-CV-00408, 1994 WL 323092 (Tenn. Ct. App. July 8,

---

stronger that the defendant did not have time to discover the leak.

1994) (affirming defendant public theme park's motion for summary judgment in plaintiff's fall from a broken concrete step, noting the doctrine of res ipsa did not apply to a public place when the agency causing the injury was not under the defendant's exclusive control); *Ferguson v. Metropolitan Gov't of Nashville*, 1993 WL 115661 (Tenn Ct. App. April 16, 1993) (finding res ipsa inference inapplicable where child slipped and fell on the stairs at a public school because the instrumentality was not under the defendant's "exclusive control"); *Wilson v. Target Stores, Inc.*, 1993 WL 30617 (Tenn. Ct. App. Feb. 10, 1993) (refusing to apply res ipsa loquitur where plaintiff was injured in a self-service store because the defendant did not have exclusive control over the display items causing the injury); *Graves v. Coca Cola Company*, 1987 WL 12378, (Tenn. Ct. App. 1987) (affirming a directed verdict for defendant where plaintiff's injury from falling display in a "high traffic area" of a drug store was accessible to customers and employees and, therefore, not under the exclusive management and control of the defendant); *Boyatt v. Yancey*, 736 S.W. 2d 105, 107 (Tenn. Ct. App. 1987) (concluding that it was error for the trial court *not* to direct a verdict in favor of the defendant because res ipsa loquitur was unavailable to customer injured at a gas pump used regularly by other customers as the pump was not under the exclusive management and control of the defendant); *Stinnett v. Wright*, 438 S.W. 2d 357 (Tenn. Ct. App. 1968) (affirming a directed verdict for the defendant in holding the doctrine of res ipsa loquitur inapplicable to a malfunctioning washing machine in a public laundry, noting that public access to the instrumentality made res ipsa inference unsuitable).

As this litany of cases suggest, Tennessee law has long demanded that plaintiffs must prove exclusive control to warrant the invocation of res ipsa loquitur. Contrary to the majority's contention regarding the disposition of a directed verdict, *Susman*, *Graves*, *Boyatt*, and *Stinnett* each indicate that a directed verdict was legally appropriate where, as in the instant case, the facts supported the contention that the vendor of a publicly accessible and frequently trafficked commercial

arena did not possess the exclusive control required to prove res ipsa loquitur.

Additionally, res ipsa loquitur pertains to only two of the five elements of a common-law negligence claim.[5] *Lamb v. State,* 2002 WL 31319755, at*7. The plaintiff must still prove that (1) defendant owed a duty and the cause of her injury lay within the ambit of that duty; (2) she suffered an injury; and (3) that defendant's conduct was the legal cause of her injury. *Burton v. Warren Farmers Coop.*, No. M1999-00486-COA-R3CV, 2002 WL 31039345, at *8 (Tenn. Ct. App. Sept. 12, 2002). Tennessee courts have defined the term "duty" as the legal obligation a defendant owes to a plaintiff to conform to the reasonable person standard of care in order to protect against unreasonable risks of harm. *McCall v. Wilder*, 913 S.W. 2d 150, 153 (Tenn. 1995).

In the context of premises liability, the person in control of the premises has the duty to exercise reasonable, ordinary care by maintaining the site in a reasonably safe condition, removing or warning of any latent, dangerous conditions that the owner is aware of or should have been aware of through reasonable diligence. *Hudson v. Gaitan*, 675 S.W. 2d 699, 703 (Tenn. 1984); *see also, Blair v. Campbell,* 924 S.W. 2d 75, 76 (Tenn. 1996). A defendant breaches that duty where it has created the dangerous condition or had actual or constructive knowledge of the condition prior to the accident. *Jones v. Zayre, Inc.*, 600 S.W. 2d 730, 732 (Tenn Ct. App. 1980). Proving constructive knowledge requires evidence that the dangerous condition existed for such a length of time that the defendant knew, or in the exercise of reasonable care, should have known of its existence, prior to the injury producing incident. *Hardesty v. Service Merchandise*

---

[5]Under Tennessee law, to support a negligence claim the plaintiff must prove the following elements: (1) a duty of care owed by the defendant to the plaintiff, (2) conduct falling below the standard of care that amounts to a breach of that duty, (3) an injury or loss, (4) cause in fact, and (5) proximate cause. *McClung v. Delta Square Ltd. Partnership, et al.*, 937 S.W. 2d 891, 894 (Tenn. 1996).

*Company, Inc.*, 953 S.W. 2d 678, 682 (Tenn. Ct. App. 1997), *referring to Self v. Wal-Mart Stores, Inc.*, 885 F.2d 336, 338 (6th Cir. 1989).

Pursuant to controlling Tennessee precedent, Wal-Mart did not breach its duty to Morris where the plaintiff's evidence failed to demonstrate an inference of defendant's actual or constructive notice of the dangerous condition. The appellant failed to introduce any evidence proving a causal connection between Wal-Mart's actions and the puddle on the floor. Mrs. Morris admitted that she did not know how the liquid got on the floor, how long it was there on the date of her injury and, did not provide any evidence that Wal-Mart had tampered with the plug or that appellee had failed to insert or close the plug. Moreover, plaintiff's insistence that the cooler had been on the floor but a short while further mitigated against finding any actual or constructive notice of the defect. *See Paradiso v. Kroger Co.*, 499 S.W. 2d 78, 79 (Tenn. Ct. App. 1973) (noting in slip and fall case that the length of time a dangerous condition existed is only one factor in determining constructive notice along with the nature of the business, its size, the number of patrons, the nature of the danger, its location along with the foreseeable consequences).

Consequently, I respectfully dissent and would affirm the decision of the district court.