NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0308n.06

No. 14-5597

**UNITED STATES COURTS OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| CINCINNATI INSURANCE CO., | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| LARRY BANKS, et ux., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:    BATCHELDER, MOORE, and SUTTON, Circuit Judges.

ALICE M. BATCHELDER, Circuit Judge.  In this diversity case, Cincinnati Insurance Company ("CIC") appeals a verdict rendered against it in favor of Larry and Wanda Sue Banks (collectively "Banks"), whose home was damaged by fire in 2011, and the district court's denying CIC a new trial.  Banks insured the home through CIC, and although CIC cited several reasons for not covering the damage, pursuant to Tennessee law CIC paid the mortgage balance to the bank that held the mortgage on the property.  CIC then filed suit against Banks to recover that payment, and Banks filed a counterclaim seeking payment for the value of the property in excess of the outstanding mortgage, as well as personal property.  After discovery and an eight-day trial, a jury rendered a verdict in favor of Banks.  CIC raises fifteen issues on appeal covering manifold aspects of this litigation.  We AFFIRM.

## I. FACTS AND PROCEDURAL HISTORY

Plaintiff Cincinnati Insurance Company ("CIC") is an Ohio insurance company, and Defendants Larry Banks and Wanda Sue Banks ("Banks") are citizens of Tennessee. CIC insured Banks' residential property in Manchester, Tennessee. The policy covers the dwelling, other structures, personal property, and any loss of use. The parties dispute whether this is an "all-risk policy," covering all direct physical loss unless otherwise excluded. On November 28, 2011, the property was damaged by fire. On March 14, 2012, Banks filed a claim for $1,904,309.64. On March 17, 2012, CIC denied the claim. Banks filed a second claim, wherein they insist in a sworn statement:

> The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant to violate the conditions of the policy or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said Company as to the extent of said loss has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

CIC denied Banks' claim on May 18, 2012. CIC's letter reads in part:

> It is the opinion of [CIC] that the fire . . . was not accidental, as required by this insuring provision. It is further the opinion of [CIC] that you and/or others acting with your knowledge, consent and permission did intentionally set fire to the property for the purpose of destroying same and defrauding [CIC] . . . ."

The policy states, "'Physical loss' means accidental physical loss or accidental physical damage." However, the property was encumbered by a mortgage, and pursuant to Tennessee law, CIC paid $587,176.44 to Peoples Bank & Trust Company for the damaged property.

CIC filed suit against Banks in U.S. District Court for the Eastern District of Tennessee on May 18, 2012, invoking the court's diversity jurisdiction under 28 U.S.C. § 1332, and seeking

both declaratory and monetary relief. Banks responded with an answer and counterclaim on June 4, 2012. CIC filed an amended complaint on June 12, 2012. CIC's complaint asked the court to declare that Banks' claim is void due to breach of contract and intentional misrepresentations, that Banks committed insurance fraud, and that an award of $670,139.36 in damages is due CIC, derived from the CIC's payment to People's Bank, plus incidental and subsequent costs, interest, and legal fees. Banks filed an amended counterclaim on August 10, 2012, followed by a second amended counterclaim on December 13, 2012, claiming (1) breach of contract, (2) statutory bad faith, and (3) common law bad faith. On November 15, 2013, after an eight day trial,[1] the jury issued a verdict finding that Banks did not "willfully and knowingly make a material misrepresentation to [CIC] with the intent to deceive" or "cause or consent to the intentional burning of the insured property." The jury awarded Banks $2,174,268.40, which when adjusted for the amount paid by CIC to People's Bank, became $1,625,053.19. On December 16, 2013, CIC filed a "motion for new trial, motion to amend findings and judgment, and/or motion for judgment notwithstanding the verdict" invoking Federal Rules of Civil Procedure 50 and 59. On April 22, 2014, the district court denied CIC's post-verdict motions. CIC filed a notice of appeal on May 16, 2014.

## II. ANALYSIS

### A.

The first two issues we address are CIC's strongest—but ultimately unsuccessful—arguments, both pertaining to jury instructions.

---

[1]The parties consented to have this case tried before Magistrate Judge William B. Carter, who presided over all the proceedings in the district court.

1.

CIC first challenges the instructions given to the jury regarding the burden of proof in this litigation. We review "legal accuracy of jury instructions de novo," *United States v. Blanchard*, 618 F.3d 562, 571 (6th Cir. 2010). We reverse for an improper jury instruction "only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 881 (6th Cir. 2007).

CIC argues that the jury should have been instructed that Banks must carry the burden of proof that the fire was not intentionally caused by any person. CIC cites for support the requirement under Tennessee law that an insured party show that a loss is covered by the terms of a policy. *Blaine Constr. Corp. v. Ins. Co. of N. Am.*, 171 F.3d 343, 349 (6th Cir. 1999). CIC also faults the court for the verdict form's not requiring Banks to prove their loss was from an "accidental" fire. Citing *Farmers Bank & Trust Co. v. Transamerica Ins. Co.*, 674 F.2d 548, 551 (6th Cir. 1982), CIC argues that Banks must prove all facts essential to recovery under the policy. In *Farmers Bank*, we reversed a district court's requiring an insurer to prove that a note on which he sought to recover was not forged. CIC also cites a district court case where a plaintiff sought to collect under a policy covering injuries "caused by accident," where the court required the claimant to prove not only that the decedent had died, but also that the death was accidental. *Smith v. Life Ins. Co. of N. Am.*, 872 F. Supp. 482, 484–85 (W.D. Tenn. 1994).

The district court instructed the jury that "Banks bear the burden only to prove by a preponderance of the evidence the amount of damages they suffered as a result of the fire within the monetary coverage limits of the insurance policy." CIC faults this instruction for failing to instruct the jury that Banks also bore the burden of proving that the fire was accidental rather

than intentional, and the burden of proving that Banks were not themselves the cause of the fire, either directly or indirectly through an agent.

Under Tennessee law, an insurance company "ha[s] the burden of proving by a preponderance of the evidence that 'the loss was due to a fire of incendiary origin, that the insured had an opportunity to set the fire, and that he had a motive to do so." *Wharton v. State Farm Fire & Cas. Ins. Co.*, 57 F.3d 1072, 1995 U.S. App. LEXIS 14586, at *7 (6th Cir. 1995) (table decision) (quoting *McReynolds v. Cherokee Ins. Co.*, 815 S.W.2d 208, 211 (Tenn. Ct. App. 1991)). Thus the only factual issue on which the district court needed to instruct the jury on this count was the nature of the fire's origin; the court accordingly rejected CIC's argument that the court should instruct the jury that Banks bore the burden of proving that they had not started the fire.

CIC's argument turns *Farmers Bank* and *Blaine* on their heads. The district court held— and we agree—that this an all-risk policy. Under Tennessee law, "an all-risk policy automatically covers any loss unless the policy contains a provision expressly excluding the loss from coverage." *HCA, Inc. v. Am. Prot. Ins. Co.*, 174 S.W.3d 184, 187 (Tenn. Ct. App. 2005). Such a policy provides coverage "in the absence of fraud or other intentional misconduct of the insured unless the policy contains a specific provision expressly excluding the loss from coverage." *Id.* Tennessee law presumes that the "burning of a property is the result of an accidental cause." *Johnson v. Allstate Ins. Co.*, 2000 Tenn. App. LEXIS 548, at *20 (Tenn. Ct. App. 2000) (citing *Ricketts v. State*, 241 S.W.2d 604 (Tenn. 1951)). "[A] claimant under an insurance policy has the initial burden of proving that he comes within the terms of the policy. . . . Conversely, the insurer [must] carr[y] the burden if it claims that one of the policy exclusions applies to the claimant and prevents recovery." *Farmers Bank*, 674 F.2d at 550,

*quoted in Blaine*, 171 F.3d at 349. Moreover, "exceptions, exclusions and limitations in insurance policies must be construed against the insurance company and in favor of the insured." *Allstate Ins. Co. v. Watts*, 811 S.W.2d 883, 886 (Tenn. 1991), *quoted in Blaine*, 171 F.3d at 349.

There was no error in the jury instruction. CIC bears the burden of proof regarding its arson defense. The district court did not err by refusing to instruct the jury that Banks had to prove that they did not cause the fire.

2.

The second issue is whether the district court erred in its jury instruction regarding CIC's arson defense. We review for abuse of discretion the denial of proposed instructions. *King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000). We will find an abuse of discretion where "a ruling rests on clearly erroneous facts or an improper application of the law or erroneous legal standard." *United States v. Sandoval*, 460 F. App'x 552, 561 (6th Cir. 2012). The elements of arson are: (1) motive, (2) opportunity, and (3) incendiary origin. *McReynolds*, 815 S.W.2d at 211. The court's instruction was, "It is not necessary that the policyholder be the person who actually starts the fire," and that the jury could find Banks committed arson if Banks "intentionally or willfully set fire to the insured property or participated in or consented to the willful burning of the property." The court continued that the opportunity element of arson can be satisfied if the policyholder had "an opportunity to set the fire or to have it set by some other person." The jury was instructed that it must determine whether the "evidence establishes that the Banks burned or caused their house to be burned." CIC requested that the court include additional language that CIC did not need to "specifically identify" the person who started the fire.

Our task is "as a whole to determine whether [the instructions] fairly and adequately submitted the issues and applicable law to the jury," and are not deficient "unless the instructions, taken as a whole, are misleading or give an inadequate understanding of the law." *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 404 (6th Cir. 2003). Reversible error would occur only if some element of what the law requires is not covered by any of the instructions. *Morgan v. N.Y. Life Ins. Co.*, 559 F.3d 425, 434 (6th Cir. 2009).

There is no indication that—for lack of the additional language—the jury was confused and might have thought Banks prevailed because CIC failed to name the arsonist. The district court's instructions sufficiently covered the elements of arson.

B.

The next three issues pertain to motions for judgment as a matter of law and the resulting impact on the jury award. In diversity-jurisdiction cases, we apply state law when reviewing such motions. *Mannix v. Cnty. of Monroe*, 348 F.3d 526, 531 (6th Cir. 2003). Under Tennessee law, when one party moves for what that State calls a motion for a directed verdict, "the trial court 'must consider the evidence most favorably for the [nonmoving party], allow all reasonable inferences in [the nonmoving party's] favor and disregard all counteracting evidence, and, so considered, if there is any material evidence to support a verdict for [the nonmoving party], [the court] must deny the motion.'" *Morris v. Wal-Mart Stores, Inc.*, 330 F.3d 854, 857–58 (6th Cir. 2003) (quoting *City of Columbia v. C.F.W. Constr. Co.*, 557 S.W.2d 734, 740 (Tenn. 1977)) (final brackets in *Morris*). This standard is essentially the same as the standard for whether there is a genuine issue of fact for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

251–52 (1986).  Whether a jury award should be reduced would automatically follow from the outcome of the motion for a directed verdict.

1.

The first of these issues is whether the district court erred by not granting CIC judgment as a matter of law under Federal Rule of Civil Procedure 50 on whether the retaining wall and driveway were covered by the "other structures" provision of the policy.  The jury awarded Banks $21,500 for these two items.  CIC argues that these items were part of the house itself, and therefore would not be covered because the coverage limit for the dwelling was exhausted when the house was designated a total loss (discussed *infra*).  The policy required other items to be physically separated from the dwelling by a "clear space" in order to come within the "other structures" provision.  CIC argues that the district court should have granted a directed verdict that the driveway and wall were part of the dwelling.  Instead, the district court submitted the matter to the jury, which found that the items were "other structures" and awarded Banks relief.

The district court acted correctly by denying CIC's motion under Federal Rule of Civil Procedure 50(a).  "A motion for a judgment as a matter of law converts what would otherwise be a question of fact, reserved to the jury and generally protected from review by the Seventh Amendment, into a legal question."  Harry T. Edwards et al., *Federal Standards of Review: Review of District Court Decisions & Agency Actions* 50 (2d ed. 2013).  A motion for judgment as a matter of law should be granted only "when the facts are sufficiently clear that the law requires a particular result."  *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000).  "[B]ecause improperly granted judgments intrude upon the province of the jury, the standard is demanding and must be applied with caution."  Edwards, *supra*, at 51.

The jury was given photographs of the items in question. Reasonable jurors could differ on whether there was sufficient space between the dwelling and the driveway or retaining wall to qualify either item as part of "other structures." It would have been improper for the court to have decided that question rather than send it to the jury. We affirm the district court's denial of the motion for a directed verdict.

CIC moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(b) that the jury award should be reduced by $21,500. Because the jury found that those items were separate from the dwelling, the jury was correct in granting Banks $21,500 for damage to "other structures." We accordingly affirm the district court's denial of the Rule 50(b) motion.

2.

CIC also filed a motion under Federal Rule of Civil Procedure 50 for judgment as a matter of law on Banks' receiving additional living expenses ("ALE") under the policy, and whether CIC waived the right to enforce a policy provision to refuse payment for such expenses.

The relevant provision states that if the dwelling becomes "uninhabitable, [CIC] pay[s] for necessary increases in living expenses incurred so that [Banks's] household can maintain its normal standard of living." CIC argues that ALE applied only to expenses that are both necessary and incurred. Banks argues that CIC provided Banks with ALE payments of $3,100 per month without regard to whether they had been incurred, and thus waived a strict reading of the provision. CIC counters that Banks signed a non-waiver agreement.

Tennessee's rule on waiver is that an insurance provision can be waived by the acts, representations, or knowledge of the insurer. *Gaston v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). "The burden of proof to establish waiver rests with the

insured, and is a question of fact for the jury." *Id.* (citations omitted). CIC immediately began paying Banks $3,100 per month without requiring costs to be incurred first, and Kevin Young (CIC's adjustor) testified that he authorized those payments as fair and reasonable. In at least one previous case, an insurance company's authorizing payments for those same reasons constituted waiver. *See, e.g.*, *Norris v. Nationwide Mut. Fire Ins. Co.*, 728 S.W.2d 335, 337 (Tenn. Ct. App. 1986). CIC claims that only "technical rights" can be waived, and that by contrast this issue turns on non-waivable "substantive rights."

CIC is incorrect. According to Tennessee law, the relevant rule concerning waiver is that it "applies to a waiver of the right to enforce a provision in a contract." *GuestHouse Intern., LLC v. Shoney's N. Am. Corp.*, 330 S.W.3d 166, 201 (Tenn. Ct. App. 2010). That is precisely the question here, whether as a factual matter CIC had waived enforcement of the policy provision that expenses be both necessary and incurred before CIC must issue payments. Both parties proffered evidence in favor of their respective positions. Given this conflicting evidence, the court properly denied the motion for a directed verdict so as to submit this question to the jury.

## C.

CIC next argues that the district court erred by granting Banks partial summary judgment by holding that the dwelling was a constructive total loss, justifying demolition of the property rather than repair. We review a district court's grant of summary judgment de novo. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013). "In examining the record to determine whether a genuine issue of material fact exists, the district court must review all evidence in the light most favorable to the nonmoving party, and 'all justifiable inferences are to be drawn in his

favor.'" *Miles v. Kohli & Kaliher Assocs.*, 917 F.2d 235, 240–41 (6th Cir. 1990) (quoting *Anderson*, 477 U.S. at 255).

A property can be designated a total loss. Tenn. Code Ann. § 56-7-801-803. CIC argues that the order from the City of Manchester's Codes Department did not require demolition of the property, and instead permitted repair as an alternative. The district court did not permit CIC to present proof on this issue stating that it had already ruled on the issue and held the property a total loss as a matter of law. CIC points out that the Tennessee courts have never adopted the constructive total loss doctrine, and instead have used a test of whether the damaged structure had lost its identity and specific character. *See, e.g.*, *Hollingsworth v. Safeco Ins. Cos.*, 782 S.W.2d 477, 479 (Tenn. Ct. App. 1988). Banks respond that the Codes Department condemned the dwelling and ordered its demolition, and that O.P. Guess, the Codes Director, executed an affidavit clarifying that the City was not giving Banks the option of repairing the dwelling. Banks further respond that the district court's adoption of the constructive loss doctrine was proper.

The district court could find no state court decision governing the rule to apply, and so followed an Eleventh Circuit diversity case involving insured Tennessee properties damaged by fire, in which the court adopted the majority rule "that a municipal demolition order creates a 'total loss at law' in the type of circumstances presented here." *Algernon Blair Grp., Inc. v. U.S. Fid. & Guar. Co.*, 821 F.2d 597, 600 (11th Cir. 1987). The district court noted that the Codes Department had authority to require demolition and that CIC presented no evidence to contradict Guess's affidavit, and granted summary judgment on this issue.

The district court—and in the previous case, the Eleventh Circuit—erred by invoking the constructive loss doctrine. The Tennessee Supreme Court long ago adopted the test of whether the building maintains its identify and specific character, as set forth in *Laurenzi v. Atlas Ins.*, 176 S.W. 1022, 1026 (Tenn. 1915). The intermediate Tennessee court in *Hollingsworth* held that *Laurenzi* was still controlling. *Hollingsworth*, 782 S.W.2d at 480. Federal courts exercising diversity jurisdiction are required to apply state law as construed by the highest court in that State. *Saab Auto. AB v. GM Co.*, 770 F.3d 436, 440 (6th Cir. 2014). The district court failed to do so here; there is no case law to suggest that *Laurenzi*'s test has been abandoned.

However, the error is harmless. The constructive loss doctrine and the identity-and-character test are not mutually exclusive, and can lead to the same result. The demolition order was valid, and therefore the dwelling would not maintain its identity and character after being razed. Thus the property is an *actual* total loss, not a *constructive* total loss. We can affirm on any basis supported by the record. *Pulte Homes, Inc. v. Laborers' Int'l Union of N. Am.*, 648 F.3d 295, 303 (6th Cir. 2011). We do so here, affirming the district court's grant of partial summary judgment, but on grounds other than those cited by the district court.

D.

CIC's remaining issues on appeal are entirely without merit, and do not warrant thorough discussion. We review each for abuse of discretion. *See King v. Ford Motor Co.*, 209 F.3d 886, 897 (6th Cir. 2000) (denying motion for a new trial reviewed for abuse of discretion); *Saxion v. Titan-C-Manufacturing, Inc.*, 86 F.3d 553, 556 (6th Cir. 1996) (district court's decision on whether to bifurcate claims reviewed for abuse of discretion); *United States v. Phibbs*, 999 F.2d

1053, 1078 (6th Cir. 1993) ("Motions in limine to exclude evidence are reviewed for an abuse of discretion.").

1.

We turn first to whether the district court erred in denying CIC's motion in limine to exclude evidence of four other fires in the Manchester area during November 2011. The court regarded those fires—all of which were suspicious in nature and happened within seven miles of Banks' home—as substantially similar to the fire that destroyed Banks' home. CIC objects that the court did exclude evidence of a previous total-loss fire at Banks' residence, showing an inconsistency in the court's method.

A party proffering evidence of other incidents bears the burden of showing the other incidents are substantially similar because they occurred "under similar circumstances or share the same cause." *Rye v. Black & Decker Mfg. Co.*, 889 F.2d 100, 102 (6th Cir. 1989). CIC argues that some of those fires were not incendiary in nature, and should thus not have been admitted as evidence.

This evidence is relevant under Federal Rule of Evidence 401. CIC argues that, if this evidence is relevant at all, then since one or more of those fires may not have been incendiary, they should have been excluded under Federal Rule of Evidence 403 because the evidence may have confused the jury. Whether the court could have ruled differently regarding this is not the test, and we find no abuse of discretion here.

2.

The second issue is whether the district court erred when it denied CIC's *Daubert* challenge to the admission of testimony of Jeffrey Morrill, an expert testifying on behalf of Banks. CIC argues that Morrill's methodology was not scientifically valid or reliable and therefore should have been excluded under Federal Rule of Evidence 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592–93 (1993). CIC also argues that the testimony should have been excluded because it did not follow NFPA 921 (from National Fire Protection Association code), since it relied upon others' reports, testimony, and photos instead of those Morrill personally developed; Morrill did not consider all the relevant data; and that Morrill is not licensed in Tennessee as an investigator, which CIC says is required by Tenn. Code Ann. § 62-26-204. Morrill's license expired.

The lack of a license does not disqualify an expert. *Doochin v. U.S. Fid. & Guar. Co.*, 854 S.W.2d 109 (Tenn. Ct. App. 1993). And the district court ruled that "another section of the NFPA [] appears to support Morrill's methodology" and that CIC's arguments "go to the weight of his testimony and not whether it is admissible." This appears to be a reference to NFPA 921, § 4.4.3.3, which includes that "[t]he use of previously collected data from a properly documented scene can be used successfully in an analysis of the incident to reach valid conclusions." CIC does not cite to any important data that was overlooked, or to any precedent showing that such data would render an expert's testimony inadmissible. Morrill has testified as an expert in more than thirty trials, and according to the record his credentials have not previously been doubted. We find no abuse of discretion here.

3.

Third, CIC complained that the district court abused its discretion when it overruled CIC's *Daubert* challenge to John Lentini as an expert witness supporting Banks. Lentini testified regarding the fire debris, and was called to rebut the testimony of CIC's expert on that point, Christine Foran. CIC argues that Lentini's opinion testimony does not satisfy Federal Rule of Evidence 702 because his analysis was based on research conducted by others, such as the readings and results from investigators.

The district court found Lentini was qualified. Moreover, Lentini accepted much of Foran's data, and disagreed only with Foran's interpretation of, and conclusions reached from, the data. Lentini's disagreement with Foran consisted of criticizing what he opined were errors in Foran's methodology. These go "to the weight of the testimony and opinions," not their admissibility. *Travelers Cas. Ins. Co. of Am. v. Volunteers of Am. Ky., Inc.*, 2012 U.S. Dist. LEXIS 117789, at *6 (E.D. Tenn. Aug. 21, 2012) (citing *McClean v. Ontario, LTD*, 224 F.3d 797, 801 (6th Cir. 2000)). The district court did not abuse its discretion by denying CIC's motion to exclude Lentini's testimony.

4.

The next two issues concern the district court's denial of CIC's motion for a new trial. First, CIC objects to the district court's excluding all evidence regarding an "accelerant detection K-9." And second, CIC objects to the court's limiting the testimony of Marks Sells, CIC's expert on the fire's cause and origin, to preclude Sells from discussing items derived from the K-9 "alerts." CIC did not disclose prior to trial that it would proffer the expert testimony regarding

the use of the accelerant detection K-9, and Banks argued that the evidence was unreliable because seven of nine samples tested negative for accelerants.

The district court found that testimony regarding the dog's training and performance was necessary to lay a foundation for the evidence. The district court ruled that without expert testimony pertaining to "the dog's training, reliability and skill," the K-9 alerts were meaningless. Because Banks did not have "the appropriate opportunity to explore this particular dog's reliability," the court disallowed the evidence, and further ruled that the relevance of this evidence would be outweighed by unfair prejudice. CIC admits that the district court noted cases where canine testimony was excluded for lack of such a foundation, but argues (citing no case law support) that since those cases were criminal—in which the burden of proof is higher—courts should not be as stringent when ruling on the same issue in civil cases such as this one. Since the canine evidence was excluded, Sells's testimony was limited to the use of accelerant-detection canines without any discussion of his investigation methods (which used the canine) or direct observations (involving the canine's actions and responses) upon which he was basing his expert opinion.

Banks respond first that canine alerts are not reliable without laboratory confirmation. The two samples for which the canine alerted positive were sent to a lab, and came back negative.[2] Banks argue that the two alerts were therefore unreliable, pointing out that Sells admitted that "K-9 hits" have no value beyond helping determine where to take samples, at which point the proper evidence becomes the lab results of those samples. Since relevant evidence is excluded when the probative value is "substantially outweighed by the danger of

---

[2]Banks make clear that Foran said the results were positive, but Lentini said they were positive only for accelerants expected to be detected in the home, but negative for foreign accelerants.

unfair prejudice," Fed. R. Evid. 403, the court could exclude the canine alerts if the jury's hearing that the dog alerted could lead them to assign more value to the alert than to the inconsistent lab report on the sample.

The district court agreed with Banks, excluding all evidence from the canine, and limiting Sells's testimony accordingly. The court did not abuse its discretion when it denied CIC's motion for a new trial on both of these issues.

5.

Next, CIC challenges the district court's denial of CIC's motion for a new trial based on the court's excluding expert testimony from State Fire Marshall Bomb and Arson Investigator Russell Robinson. The deadline for disclosure of expert witnesses was November 13, 2012. CIC did not make the disclosure until August 9, 2013—eight months later. CIC claims it was unable to obtain the State's investigation file until after the court's deadline for expert disclosures had passed. The court permitted Robinson to testify regarding what he did and saw during the investigation, but did not allow him to offer expert opinion. The court held that the failure to meet the deadline was prejudicial to Banks and not substantially justified.

Robinson is a non-retained expert. CIC argues that Fed. R. Civ. P. 26(a)(2) controls, and therefore that the required disclosure includes only the subject matter and summary of facts. CIC argues that it satisfied these requirements on August 10, 2012, by informing Banks that Robinson would testify on the "cause and origin and investigation of the Banks' fire and the claim submitted by the insureds," and further, by its supplement to interrogatory answers. CIC also argues that the 2010 amendment to Rule 26(a)(2)(C) has generated confusion as to what the new rule requires, and thus essentially asked to be excused on equitable grounds for any possible

violation. Separately, CIC argues that it is unreasonable to conclude that Banks were surprised by CIC's attempt to introduce expert opinion from Robinson.

The district court was unpersuaded by these arguments. The district court acted well within its discretion by excluding Robinson's expert testimony, and thus did not abuse its discretion by denying a new trial on this issue.

6.

The next issue is whether the district court erred in denying a new trial because it had limited the expert testimony of Mike Caldwell. The district court did not permit Caldwell to testify as to the value of Banks' personal property items. CIC objects that Banks' personal property expert, Tanya Butler, was allowed to testify,[3] but Caldwell was not. Butler has acted upon 500 personal property inventories, compared to 300 for Caldwell.

The district court found Caldwell did not have the necessary "knowledge, expertise, or training in evaluating personal property and that he relied on the expertise of others to do so in his report." The court also gave CIC the opportunity to designate someone else from the same company as Caldwell to testify. CIC declined to do so.

The court acted within its discretion by finding that Caldwell was not qualified to testify, and went beyond what was required to offer CIC the opportunity to substitute a different expert. The district court did not abuse its discretion by denying a new trial.

---

[3]Although Butler's testimony was allowed, it appears that she never actually testified.

7.

Next, we consider whether the district court erred by bifurcating Banks' bad-faith claims from the remaining claims. Banks' counterclaim alleged bad faith against CIC under Tennessee Code Annotated § 56-7-105. That counterclaim was filed on August 10, 2012. On October 7, 2013—fourteenth months later—Banks moved to bifurcate the statutory bad-faith claims from the contractual claims. The district court informed the parties on October 24, 2013, that it planned to grant the motion.

Banks argues that this issue is moot because Banks voluntarily dismissed their bad-faith claim at the conclusion of Phase 1 of the trial. CIC argues that there was certain evidence it would have introduced that would have impacted the principal trial had it known how the issue of a second trial would eventually play out. Banks counters that the evidence CIC wished to introduce was ruled inadmissible for any purpose other than bad faith.

This goes to tactical decisions that counsel routinely make in determining how best to prosecute their case. CIC is not affirmatively entitled to a "do-over" when part of a case unfolds differently from what they expected. And the district court could take into account whether the evidence in question was in fact inadmissible for any purpose other than bad faith, such that once bad faith was no longer at issue in the litigation, there was no acceptable purpose for the evidence. There was no abuse of discretion here.

8.

The final issue is whether the district court erred by not granting a new trial on the grounds that the jury's verdict was against the weight of the evidence. A new trial is "warranted when a jury has reached a 'seriously erroneous result' as evidenced by: (1) the verdict being

against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996). CIC argues that "[b]ased upon the jury's verdict, it is clear the jury did not even listen to the Banks' own evidence and arguments."

CIC's argument on this count is meritless. The district court did not abuse its discretion by refusing to disturb the jury's verdict.

## III. CONCLUSION

We AFFIRM the judgments of the district court.